Farmers' Loan and Trust Co. *v.* Hendrickson.

## THE FARMERS' LOAN AND TRUST COMPANY, and SMITH, *vs.* HENDRICKSON, sheriff, &c., and others.

As between mortgagees and judgment creditors of the mortgagors, the rolling stock of a rail road company—such as locomotive engines, passenger, baggage and freight cars, hand cars, snow plows, &c.—are to be deemed *fixtures*, and will pass under a mortgage of the track or roadway, and the lands occupied by the company for depot buildings, engine houses, &c., together with the superstructure, &c.; instead of being subjected to the lien of judgments recovered subsequent to the execution of the mortgage, and to a levy upon executions issued thereon.

The statute relative to chattel mortgages having provided that those instruments, unless filed in the proper town clerk's office, shall be absolutely void, as against the creditors of the mortgagor, the mere knowledge, in a creditor, of the existence of a chattel mortgage executed by his debtor, which has not been duly filed, will not preclude him from availing himself of the objection that it is for that reason void.

The rule is different as to subsequent purchasers and mortgagees, who, in order to be protected, must take their conveyances in good faith; which they cannot do if they have actual knowledge of the existence of an antecedent mortgage.

As a general rule, in order that articles originally personal should be considered

Farmers' Loan and Trust Co. *v.* Hendrickson.

as annexed to the freehold, so as to become fixtures, they must either be fastened to the realty or what is clearly a part of it, or must be placed upon the land with a manifest intent that they shall permanently remain there; and that they shall be in some way peculiarly fitted to something that is actually fastened upon it, and essential if not absolutely necessary, to its profitable enjoyment.

It is not absolutely necessary that things should be stationary in any one place or position, in order that they should be technically deemed fixtures.

THIS was a controversy submitted for the opinion of the court, under section 372 of the code. The material facts are set forth with sufficient fullness in the opinion of the court. The question submitted by the parties, for the judgment of the courts, was whether the judgment creditors of the Flushing Rail Road Company, by virtue of their several judgments and executions, and the levies made by the sheriff, acquired a lien upon the property levied on as the property of said company, superior in law to the claim of the plaintiffs under and by virtue of prior mortgages, executed by the rail road company.

*C. P. Kirkland,* for the plaintiffs.

*W. M. Evarts,* for the defendants.

*By the Court,* S. B. STRONG, P. J.  The Flushing Rail Road Company executed two mortgages to the Farmers' Loan and Trust Company, one dated on the 1st of September, 1853, and recorded in the county clerk's office on the 25th of October in the same year, and the other dated on the 1st of November, 1854, and recorded in the county clerk's office on the 28th of the same month. Neither of the mortgages has been filed in the office of the clerk of any town. Each of the mortgages was of all the pieces or parcels of *land forming the track* or *roadway* of the company, from their depot in the village of Flushing, to their depot at Hunter's point, on the East river, being the termini of the road, and all the *lands* occupied or to be occupied by the company for *depot buildings, engine houses,* or *other accommodations* for the business of the rail road, together with the *superstructure* and *buildings* thereon,

and also all the *rails* and *other materials used thereon* or pro-cured therefor, inclusive of the *iron rails* purchased or to be purchased, bridges, viaducts, culverts, fences, depot grounds and buildings thereon, *engines, tenders, cars,* tools, machinery, materials, contracts, and all other personal property, together with *tolls, rent,* or *income* to be had or levied, and all *franchises, rights* and *privileges* of the company. And the mortgages provided that in case of default in the payment of the principal or interest in the bonds thereby secured, the mortgagees might enter into and take possession of all or any part of the mort-gaged premises, and have, use and employ the same, and apply the net proceeds to the payment of the principal and interest of the bonds ; and in case of six months' default, the mortgagees, on the written request of the holders of two-thirds of the bonds, were authorized to sell the mortgaged premises, and to execute to the purchaser a good and sufficient deed of conveyance for the same. The company made default in the payment of the interest which fell due on the bonds secured by said mortgaged premises on the 20th of January, 1857. On that day one judg-ment, and on the 13th of March following, five judgments were rendered against the company. On the first judgment an ex-ecution was issued, on the day when it was entered, and on the other five judgments executions were issued on the 18th of March, 1857. On the next day the defendant Hendrickson, sheriff of the county of Queens, to whom all the executions were delivered, levied upon two locomotive engines and tenders, four first class passenger cars, (large size,) two first class passen-ger cars, (smaller size,) two second class passenger and baggage cars, six freight cars, two hand cars, one snow plow, and one new frog for a turn out, substantially constituting the rolling stock, as it is usually called, of the company. The property levied upon had been purchased and placed upon the road in the intermediate time between the dates of the two mortgages. It was all in actual use when the levy was made. The question submitted for our consideration is, which has the prior, and (as the com-pany is hopelessly insolvent, and all its property and franchises insufficient to pay the mortgage bonds,) the entire right to the

Farmers' Loan and Trust Co. *v.* Hendrickson.

property upon which the executions were levied; the plaintiffs who are, or represent, the mortgagees, or the judgment creditors who, together with the sheriff, are the defendants in this action?

There is not at present any controversy between the bond holders under the respective mortgages. If therefore the property in question is to be deemed chattels, it is not material to inquire whether the first mortgage could cover only what belonged to the company when it was executed, or whether there is any thing in the description or nature of the property to render the security ambulatory, so that like a policy of insurance on a stock of goods in a store, it would include whatever might be comprehended within the terms used, for the time being. If a mortgage can be made to apply, either at law or in equity, to after acquired property, it would seem to be very proper to give it that effect in reference to the rolling stock of a rail road company, as it is subject to so many dilapidations, and substitutions of new for old. There are cases which have given that extended effect to mortgages by railway companies, and I am inclined to think that those decisions are right.(*a*) In the case under consideration, however, if the property in question was not affected by the first mortgage, it belonged to the company when the second mortgage was given, and was included in that. Still, if such property consists of chattels, and the law relative to them only is to be applied, they cannot be removed or held under either mortgage, against the execution creditors, as neither of them was ever filed in any town clerk's office, pursuant to the act of April 29th, 1833. (*Laws of that year, ch.* 279, *p.* 402.) The first section of that act provides that mortgages of personal property, unless filed in the proper town clerk's office, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith. It was contended on the argument, that some of the defendants were precluded from raising the objection that the mortgages had not been filed, as they were directors of the company, and

(*a*) See *Seymour* v. *Canandaigua and Niagara Falls R. R. Co.*, *ante, p.* 284.

must therefore have known of the existence of such mortgages when their judgments were obtained. There is no allegation of any fraudulent intent in any of those creditors, either in co-operating with their associates in making the mortgage loans, or in creating, or attempting to enforce, their own demands. A knowledge, in a creditor, of the existence of a mortgage on personal property which has not been duly filed, will not preclude him from availing himself of the objection. The statute makes no exception. The mortgage is absolutely void as against the creditors of the mortgagor. It is different as to subsequent purchasers and mortgagees. They must, in order to be protected, take their conveyances in good faith, and that cannot be if they have actual knowledge of the existence of an antecedent mortgage, and are conscious that their conduct, if it should be available, would have a tendency to reduce the security of an innocent but careless creditor.

In this case the plaintiffs can clearly hold under their mortgages the rolling stock of the company, if it consisted of what are usually denominated fixtures. In conveyances actually made by the parties, such as deeds from vendors to vendees, and mortgages, which are in this respect properly placed on the same footing, many subjects are deemed fixtures which are not so in cases between landlords and tenants, or where the title passes by operation of law. As between landlord and tenant, the more favorable consideration is due to the latter, for many and obvious reasons. In voluntary conveyances the construction, in doubtful matters, (and many of the rules in relation to fixtures are very uncertain,) is favorable to the grantees ; and rightly so, as the language is that of the grantors, who are, or may fairly be presumed to be, attentive to their own interests. Where the title passes by operation of law, the parties stand upon an equality, and neither is favored to the disadvantage of the other. As between heirs and executors, our revised statutes provide (2 *R. S.* 82, § 6) that things annexed to the freehold, or to any building, for the purpose of trade or manufacture, and not fixed into the wall of a house so as to be essential to its support, crops growing on the land, and any kind of produce

Farmers' Loan and Trust Co. *v.* Hendrickson.

raised annually by labor and cultivation, excepting grass growing and fruit not gathered, shall be deemed assets. Many of those articles would undoubtedly pass to a vendee of the real estate, by the common law, which in that respect is not altered by the revised statutes. They are not declared to be personal property except in reference to the estate of deceased persons. The descriptions are of course inapplicable to the rolling stock of a rail road company.

In order to determine whether such stock when fitted to, and placed and continually used upon, the rails, may be deemed fixtures, as between mortgagor and mortgagee, or are to be considered personal estate, I have examined many authorities to ascertain whether there are any clear and well settled principles which are applicable to, and will control, that question. The authorities are numerous, but they are by no means consistent as to principles or their application. The best, although by no means a universal, rule is that in order that articles originally personal should be considered as annexed to the freehold so as to become fixtures, they must either be fastened to the realty or what is clearly a part of it, or must be placed upon the land with a manifest intent that they shall permanently remain there, and should be in some way peculiarly fitted to something that is actually fastened upon it, and essential if not absolutely necessary to its profitable enjoyment. Chancellor Kent says, (2 *Com.* 342,) that "there are many chattels which, though they be even of a movable nature, yet, being necessarily attached to the freehold, *and contributing to its value and enjoyment*, go along with it, in the same path of descent or alienation. This is the case with the deeds and other papers which constitute the muniments of title to the inheritance, and also with shelves and other fixtures in a house, and the posts and rails of inclosures." "So also it is understood that pigeons in a pigeon house, deer in a park, and fish in an artificial pond, go with the inheritance to the heir." And he might have added, pass by a deed to the vendee. So, too, it has been settled that manure upon the land, sea weed cast upon the shore, swinging gates and doors and window shutters, which may be removed from the erections to which they

belong without doing violence to them, the key to a lock which the owner may carry about in his pocket, the top and unsecured rails of a Virginia fence, the loose stones in an ordinary stone fence, bars which are frequently taken out of the post holes, door stones which are attached simply by their weight, Venetian blinds, and the loose lid to an oven, are to be deemed fixtures, and pass by a deed of the land. In an unreported case before the court of appeals in 1847, it was decided that a stone slab settled in, but not fastened to, or inclosed by, a frame, in a dairy house, was annexed to the realty. In giving the opinion of the court in that case, I went principally upon the ground that the stone was properly fitted to a frame which was fastened to the building, and was designed for permanent use there. The same tribunal went much farther in *Snedeker* v. *Warring*, (2 *Kern.* 170.) That case had been tried before me at the Rockland circuit. The controversy related principally to Thom's statue of Washington. The statue, which weighed about three tons, had been placed by him, and was, when the question as to its being a fixture arose, standing upon a base resting on a permanent artificial mound raised for that purpose in his grounds; the mound was constructed of cut stone laid up without mortar or cement, although the seams were pointed ; the statue was *not fastened* to the base, nor was the latter *affixed* to the foundation upon which it rested. Thom was examined as a witness, and testified that the statue was placed where it stood simply for exhibition and sale, and not as an ornament or at all for the use of the place. I instructed the jury that they were not concluded by Thom's testimony, but with that should take into consideration the manner in which the statue had been placed upon the land, its position, and situation, in order to determine the purpose. for which it had been erected where it was; that if they came to the conclusion that it had been placed there simply for exhibition and sale, then, as it was not actually fastened, they must consider it to be personal property, and find a verdict for the plaintiff, who claimed it as such; but that if they should adopt the conclusion that it had been erected and stationed as an ornament to, and for the enjoyment of, the land, they must consider it as

Farmers' Loan and Trust Co. *v.* Hendrickson.

a fixture, and find a verdict for the defendant, who claimed it as a part of the real estate. The jury found a verdict for the plaintiff, thereby considering the statue as personal estate. The general term refused to set the verdict aside, and an able opinion was given by the late Judge Barculo, which was never published in any book of reports. The court of appeals, however, subsequently ordered a new trial, on the ground that the statue had become a fixture. A very learned opinion was given by Judge Parker, in which a majority of his brethren concurred, in which he reviewed the authorities in the civil law, and came to the conclusion, (contrary to his impressions on the argument, as he assured me,) that statues erected upon grounds were, without reference to the design, attached to the realty. The same court decided, in *Bishop* v. *Bishop*, (1 *Kernan,* 123,) that hop poles, which had been taken down for the purpose of gathering the crops, and piled in the yard, with the intention that they should be replaced the next season, were a part of the real estate. The reason assigned by Gardiner, Ch. J., who gave the prevailing opinion, was that the poles were to be *permanently used* upon the land, and were *necessary for its proper improvement.* I should infer from his remarks that he thought that the doctrine of corporeal annexation had been laid down too strictly by Judge Cowen, in his elaborate opinion in *Walker* v. *Sherman*, (20 *Wend.* 655.) Judge Denio, who dissented from the majority in *Bishop* v. *Bishop*, did so for the reasons that the poles had not been constantly fastened to the ground, and that they were not constructively annexed, *as it did not appear that the inheritance* could not be enjoyed without the use of them, or that they were accessories necessary to the enjoyment of the principal. It would seem from the remarks of both of those eminent judges, that they concur with the opinion expressed by the court in the case of the *Olympic Theater*, (2 *Browne*, 285,) that where an instrument or utensil is a necessary accessory to the enjoyment of the inheritance, it is to be considered as a part of such inheritance. In *Farrar* v. *Stackpole*, (6 *Greenl.* 154,) the controversy related, among other things, to a chain attached by a hook to a piece of a draft chain, fastened to the shaft by a spike from

which it could be hooked and unhooked at pleasure. The chain was commonly used in drawing logs into a saw mill. The court said, " we are of opinion that it [the chain] ought to be regarded as appertaining to, and constituting a part of, the mill."

There are undoubtedly cases which seem to, if they do not, conflict with the principle which I think is indicated, if not fully sustained, by the authorities which I have cited. *Walker* v. *Sherman* is strongly in favor of the doctrine that corporeal annexation is requisite to constitute things originally personal parts of the realty. In that case, however, Judge Cowen remarks, that in order to make a thing of a nature personal in itself a fixture, so that it will pass as an incident to the land, it should be in some way permanently, at least habitually, *attached* to the land, or some building upon it. It need not be constantly fastened. It need not be so fixed that detaching will disturb the earth, or rend any part of the building. I am not prepared to deny that a machine movable in itself would become a fixture from being connected in its *operations* by bands *or in any other way*, with the permanent machinery, though it might be detached and restored to its ordinary place as easily as the chain in *Farrar* v. *Stackpole*. I think it would be a fixture notwithstanding." The same learned judge says, in another part of the same opinion, that "it is not to be denied that there are strong dicta, and we may add the principle of several adjudicated exceptions, upon which we might with great plausibility declare the machines in question, *so essential to the purposes of the manufactory*, although entirely dissociated with the freehold, a fit subject for entering into the list of constructive fixtures." The case itself may have been decided upon the ground mentioned by the learned judge, that not one of the witnesses pointed out any connection whatever between the machinery and the land or building upon it. The cases which decide that the unattached machinery in factories, movable erections upon the land, and various articles used in dwelling houses and other buildings but not fastened to them, were not fixtures, were, I think, based mainly upon the disposition to encourage trade and manufactures, and to induce tenants to manage the property of their

landlords in a manner beneficial to themselves and not prejudicial to the owners. Trade and manufactures are, ordinarily, matters of a personal nature, and their incidents have generally the same character; additions made by tenants are mostly for their own benefit, and are not therefore designed for the permanent use of the estate. The same is true as to many of the articles introduced by tenants into dwelling houses. In these cases there are strong reasons why those various articles should belong to those who procure them with their own means, rather than to the owners of the real estate. Besides, such real estate may be enjoyed profitably without the additions made by traders, manufacturers or tenants. Their removal, whether by those who placed them upon the lands or their judgment creditors, although it may to some extent impair the value of the realty, does not wholly destroy its utility.

The property of a railway company consists mainly of the road bed, the rails upon it, the depot erections, and the rolling stock, and the franchise to hold and use them. The road bed, the rails fastened to it, and the buildings at the depots, are clearly real property. That the locomotives, and passenger, baggage and freight cars are a part, and a necessary part, of the entire establishment, there can be no doubt. Are they so permanently and inseparably connected with the more substantial realty as to become constructively fixtures? Railways being a modern invention, and of a novel character, we have no decisions upon this question, and those relating to and governing old and familiar subjects do not absolutely control us, although we must necessarily resort to them as guides. Judge Weston well remarks in *Farrar* v. *Stackpole*, (6 *Greenl.* 157,) that " modern times have been fruitful of inventions and improvements for the more secure and comfortable use of buildings, as well as of many other things, which administer to the enjoyment of life. Venetian blinds, which admit the air and exclude the sun, whenever it is desirable so to do, are of modern use ; so are lightning rods, which have now become common in this country and in Europe. These might be removed from buildings without damage, yet as *suited and adapted* to the buildings upon which they

are placed, and *as incident* thereto, they are doubtless part of the inheritance, and would pass by deed as appertaining thereto." "The general principles of law must be applied to new kinds of property as they spring into existence in the progress of society, according to their nature and incidents, and the common sense of the community." It may be that if an appeal should be made to the common sense of the community it would be determined that the term "fixtures" could not well be applied to such *movable* carriages as railway cars. But such cars move no more rapidly than do pigeons from a dove cote or fish in a pond, both of which are annexed to the realty. Judge Cowen admits, in *Walker* v. *Sherman*, that a machine movable in itself may become a fixture by being connected in its operation by bands or in any other way with the permanent machinery. It results from many cases that it is not absolutely necessary that things should be stationary in any one place or position in order that they should be technically deemed fixtures. The movable quality of those cars has frequently, if not generally, induced the opinion that they are personal property. Hence railway mortgages of the rolling stock have, as I understand, been generally filed in the offices of the clerks of all the towns through which the roads pass. That was undoubtedly the more prudent course, as it saved any question as to the character of the property. Even the learned counsel for the plaintiffs has gone no further than to denominate the cars "quasi" fixtures. Public opinion, however, although respectable in matters of fact, is an unsafe guide as to legal distinctions.

That railway cars are a necessary part of the entire establishment, without which it would be inoperative and valueless, there can of course be no doubt. Their wheels are fitted to the rails; they are constantly upon the rails, and except in cases of accidents, or when taken off for repairs, nowhere else; they are not moved off the land belonging to the company; they are peculiarly adapted to the use of the railway, and in fact cannot be applied to any other purpose; they are not, like farming utensils, and possibly the machinery in factories, and many of the movable appliances to stores and dwellings, the objects of general

trade : they are permanently used on the particular road where they are employed, and are seldom, if ever, changed to any other. Many of these are strong characteristics of the realty ; some of them have often been deemed conclusive. In *Lushington* v. *Sewall*, (1 *Sim*. 435, 480,) Vice Chancellor Hart was inclined to think that the devise of a West India (real) estate passed the stock of slaves, cattle and implements, because such things are essential to render the estate productive, and denuded of them it would be rather a burthen than a benefit. The reasons assigned appear to be sound, but the vice chancellor carried the doctrine further than the cases would warrant, as slaves (in the West Indies,) cattle and implements of husbandry were objects of general commerce. In the case of *The King* v. *The Inhabitants of St. Nicholas Gloucester*, (*cited by Judge Cowen*, 20 *Wendell*, 259,) it was decided that a steel yard hung in a machine house was a fixture. Lord Mansfield said, " the principal purpose of the house is for weighing. The steel yard is the most valuable part of the house. The house therefore applied to this use may be said to be built for the steel yard, and not the steel yard for the house." Surely this reasoning is equally applicable to the cars on a railway. The railway is constructed expressly for the business to be done by the cars, and what evinces their essentiality in a strong point of view in this case, is that there can be no tolls, which are expressly mortgaged, without them. It is remarked by Mr. *Dane*, in his *Abridgment*, (*vol*. 3, *p*. 157,) that certain articles were " very properly a part of the real estate and inheritance, and pass with it, because not the mere fixing and fastening to it is alone to be regarded, but the use, nature and intention." Judge Weston, in the case which I have cited from 6th Greenleaf, in speaking of a saw mill, said, " if you excluded [from the realty] such parts of the machinery as may be detached without injury to the other parts, or to the building, you leave it mutilated and incomplete, and insufficient to perform its intended operations." Surely all this would be true of a rail road, for it is nothing without its locomotive vehicles. It is true that no mechanical or agricultural business can be carried on to much extent without tools or

farming implements, and such tools and implements are universally conceded to be personal property ; but then such tools or implements are not peculiarly adapted, or confined to any particular establishment, but may be used upon them generally and are subjects of frequent barter.  It is different, I admit, as to the stationary machinery in a factory, and articles of a similar character in a dwelling house, which are not absolutely fastened; but although they are considered as personal property for reasons peculiar to them, and not of universal application, yet such reasons do not seem to me sufficient, while many things become fixtures without physical annexation.

If railway cars were used in any other place than upon the lands belonging to the company, or for any other purpose than in the transaction of its business, or were constructed in such shape, and so extensively, as to become objects of general trade, or were not a necessary part of the entire establishment, I might consider myself as compelled by the weight of authority to decide, that as they are not physically annexed to what is usually denominated real estate, they must be deemed personal property. But as each and all of these characteristics or incidents are wanting, the considerations which I have mentioned, or to which I have alluded, leading to an opposite conclusion, require us to determine that they are included as fixtures, or necessary incidents, in a conveyance of the real estate.  In thus deciding we shall unquestionably carry out the intention of the parties, as it could not have been the design of such parties, certainly not of the mortgagees, that the security should be diminished by the wear and tear of the machinery, and the inevitable accidents to which it is subjected.  Possibly the substituted machinery might not be included in the mortgage if it should be deemed personal property ; and few if any would be willing to loan their money upon such an uncertainty ; but it would be otherwise if the additions should be considered as made to the real estate.

Judgment should be entered for the plaintiffs, in conformity with the agreement contained in the submission of the parties.

[KINGS GENERAL TERM, October 13, 1857.  *S. B. Strong, Birdseye* and *Davies*, Justices.]