## CAROLINE READ v. HOZIAL HORNER AND HENRY H. ALLMAN.

*Chattel mortgage—Bona fide purchaser—Notice—Conversion— Costs.*

1. Actual notice to the purchaser of property of an unrecorded chattel mortgage thereon is equivalent to filing the mortgage, under How. Stat. § 6193.

2. An agreement for the sale of a building standing on leased land, by which the purchaser agrees to pay the purchase price in specified installments, and to forfeit all claim to the building in case of a failure to make such payments, and upon demand deliver up possession to the vendor, and forfeit all payments made thereon, is held to operate as a chattel mortgage.

3. If possession is taken under such an agreement, and the building subjected to its lien without any foreclosure proceedings, the vendor is bound, as against the vendee, to account for the value of the building in excess of his lien.

4. If such value is found to be less than $100 in a suit brought by the vendee in the circuit court for its recovery, the vendor is entitled to a judgment for costs.

Error to Ionia. (Smith, J.) Argued January 13, 1892. Decided February 5, 1892.

Case. Both parties bring error. Affirmed, except as to costs. The facts are stated in the opinion.

*Clute & Clute*, for plaintiff.

*Davis & Nichols*, for defendants.

Long, J. Plaintiff brought an action on the case against the defendants for the value of a blacksmith shop removed from her premises by them. The defendants pleaded the general issue, and gave notice that they were the owners of the shop, and had a right and license to enter upon the plaintiff's lands and remove the same. The cause was tried before the court without a jury, and findings of fact and law made. The court found the value of the shop at $200, and that the defendants had a right to remove it from plaintiff's premises; that defendants' lien amounted to $188.90; and gave judgment in favor of the plaintiff for $11.10, awarding to her the costs of the suit. Both parties bring error.

It appears that in March, 1883, the plaintiff purchased the land, upon which her dwelling-house is situate, from John Friend. The shop in controversy was situate upon one corner of this land. Prior to the purchase of the land by the plaintiff, her grantor, John Friend, had entered into a lease with one Peter Stanbaugh for a portion 3 rods in width and 5 rods deep on the north-east

corner thereof for a period of 10 years from August, 1879, to be occupied by a blacksmith shop, without any charge for rent, and with the right, stipulated in said lease, to remove the shop at the expiration of his term. Stanbaugh built the shop upon the land described, and in February, 1880, with the consent of the lessor, assigned the lease, with all its privileges, to S. C. Greenman, who entered into possession of it. In September, 1882, Hiland L. Read, plaintiff's husband, entered into an agreement with Greenman for the purchase of this shop. The terms of that contract were that,—

"Said first party being the owner and proprietor of a blacksmith shop situated on ground leased from John Friend [describing the lands], said second party buys the said blacksmith shop from said first party, subject to the terms and conditions of the lease of said ground running from said John Friend to said Sheldon C. Greenman (by assignment of said lease to said Greenman by Michael Stanbaugh), said second party to pay for the said shop as follows: $25 on or before the first day of January, 1883; $100 on or before the first day of October, 1883; $100 on or before the first day of October, 1884,—said $225 to draw interest at the rate of 7 per cent. per annum from the date of this article, according to three certain promissory notes bearing even date herewith, executed by Hiland L. Read, second party hereto. And it is further stipulated and agreed by and between the parties hereto that, in case said second party shall fail to pay the said several sums of money according to the said promissory notes and the conditions of this article, he, the said second party, shall thereby forfeit all claim to the said shop, and shall, upon demand thereof being made of him, his heirs or assigns, by the said first party, his heirs or assigns, quit and deliver up said shop to said first party, his heirs or assigns, and shall forfeit all payments theretofore paid to said first party for the said shop. And the said first party hereby declares and warrants the said blacksmith shop to be at the ensealing of this article free and clear of all liens, levies, or incumbrances whatever."

On December 27, 1882, Mr. Greenman assigned this

contract and agreement by writing, together with the two notes of $100 each, signed by Mr. Read, to Henry H. Allman and Hozial Horner, the defendants in this suit. On September 10, 1885, it appears there was indorsed upon the back of the contract of December 27, 1882, and signed by Hiland L. Read, the following agreement:

"It is hereby expressly agreed, by and between Hiland L. Read, one of the parties to the within contract, and Hozial Horner, one of the assignees of said contract, that the blacksmith shop herein mentioned has not been paid for, and also that said title of Hiland L. Read to said shop is hereby forfeited; and I, said Hiland L. Read, do by these presents, by virtue of said forfeiture, hereby surrender the possession of said blacksmith shop to the assignees in said contract."

It appeared upon the trial, and was so found by the trial court, that at the time the plaintiff purchased the premises, which was March 8, 1883, she did so with full knowledge and notice of the rights of Hiland L. Read and of the defendants in said shop, and of the lease of the land upon which the same was situate. She and her husband occupied the land as their homestead, there being a dwelling-house upon it, until June 11, 1884, when they separated. Mr. Read was owing his wife $100 or more, and when they separated he sold to her his interest in the shop in consideration of what he owed her and her agreement to support their two infant children. The plaintiff had possession of the shop, and was occupying it by her tenant, until defendants entered and removed it in September, 1885. The court found, further, that before the arrangement between the plaintiff and her husband she knew of the indebtedness for the shop.

The contention upon the part of plaintiff's counsel here is:

1. That the agreement of September 7, 1882, between

Greenman and Read, conveyed the title of the shop to Read; that the agreement is a bill of sale, contains no reservations of title in the vendor, and no authority upon the part of the vendor to enter upon the land and. retake it.

2. That the most that can come from the forfeiture clause is that, through its language, security in the nature of a chattel mortgage lien can be worked out; and upon the oral. argument her counsel admits that the contract operates as security in the nature of a chattel mortgage, but claims that this agreement was never filed as a chattel mortgage, and therefore was absolutely void, under the provisions of the statute relative to filing chattel mortgages.

We think the plaintiff's first contention cannot. be sustained, and that the agreement, taken together, operates as a security in the hands of Greenman and his assignees, as a lien in the nature of a chattel mortgage.

We are also of the opinion that the plaintiff is not in a position to assert here that the mortgage is void as against her by reason of its not being filed. The statutes relative to filing chattel mortgages (section 6193, How. Stat.) provides:

"Every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession, of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed," etc.

All that the plaintiff can claim here is that she stood in the position of a purchaser in good faith. It has never been held in this State under the provisions of this statute that one is a good-faith purchaser who has actual knowledge or notice of the chattel mortgage lien, though the mortgage has not been filed in the proper town-clerk's office at the time of the purchase. There

are many cases holding chattel mortgages void for want of filing, as against an indebtedness incurred while the mortgage is in existence and not filed, and which indebtedness was incurred in ignorance of the existence of such mortgage. These cases are cited by Mr. Justice MORSE in *Dempsey v. Pforzheimer,* 86 Mich. 652. It has been frequently held that such mortgages are void for want of filing in the proper town-clerk's office, as against a mortgage duly filed, though subsequently given. One who purchases with actual knowledge of a prior mortgage is not a purchaser in good faith, within the meaning of the statute. In *Wetherell v. Spencer,* 3 Mich. 123, it was held that notice of the existence of an unpaid prior mortgage of personal property destroys the preference which the second mortgagee would otherwise be entitled to claim in consequence of the omission of the first mortgagee to refile his mortgage within the period prescribed by statute; that he is not a subsequent mortgagee in good faith, within the meaning of the statute. The doctrine is fully followed in this case as that laid down in *Doyle v. Stevens,* 4 Mich. 87. The same rule is applied to subsequent purchasers as to subsequent mortgagees who claim to hold in good faith as against a prior unrecorded mortgage; but in either case actual notice to them of such prior mortgage, though unrecorded, is equivalent to filing within the provisions of this statute. *Sayre v. Hewes,* 32 N. J. Eq. 652; *Gildersleeve v. Landon,* 73 N. Y. 609; *Trust Co. v. Hendrickson,* 25 Barb. 484; *Moore v. Simonds,* 100 U. S. 145.

In the present case, it appears that the plaintiff had actual notice and knowledge of the contract of September 7, 1882, and the terms and conditions upon which her husband held the shop in question. She knew at the time of her purchase from her husband that he was indebted to Greenman in the sum of over $200, and that

the condition upon which the title to the shop was vested in her husband was the payment of this indebtedness. She also knew, as found by the court below, that this agreement had been assigned to the defendants in the case, and that under the terms of the original lease the defendants had the right to enter upon the premises and remove it.

Treating this agreement as a chattel mortgage of which the plaintiff had actual notice and knowledge at the time of her purchase, the defendants' right to assert their lien is paramount to any claim which the plaintiff had. They took the shop, held it, and subjected it to the lien; but it does not appear that they attempted any foreclosure proceedings. As against the owner,—and the plaintiff must be treated as such,—they were bound to account for the value of the property taken over and above their mortgage lien, and the court below was justified in so finding, and giving judgment in favor of the plaintiff for the $11.10.

The court was in error in awarding costs to plaintiff. Justices of the peace have original jurisdiction in all civil actions when the debt or damage does not exceed $100. The damage, as claimed in the declaration in this case, was $500; and the value of the shop, as found by the court, was $200. The declaration is in trespass on the case for the unlawful removal and conversion of the property. The defendants had a lien upon the property equal to its value, less $11.10. This was the amount and value of the plaintiff's interest in the building, and for which she had a right to recover, and did recover. Her claim was not reduced by set-off so as to entitle her to damages under the provisions of subdivision 5, § 8964, How. Stat. *Ladd v. Duncan,* 23 Mich. 285.

The judgment of the court below must be affirmed, except as to the costs. The costs of this Court, as well

as the costs of the court below, must be awarded to the defendants.

MORSE, C. J., McGRATH and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.