HENRY KARST, Respondent, *v.* GEORGE A. GANE et al.,
Impleaded, etc., Appellants.

The word "creditors" in the provision of the act of 1833 (§ 1, chap. 279,
Laws of 1833), in reference to the filing of chattel mortgages, which
provides that such a mortgage, unless filed as directed by the act, "shall
be absolutely void as against the creditors of the mortgagor," includes
creditors whose debts antedate the execution of the mortgage, as well as
those whose debts were subsequently contracted.

A simple contract creditor is also as much within the protection of the
statute as a creditor whose debt has been merged in a judgment.

Such a mortgage, therefore, is not valid as against an antecedent creditor,
although it was filed before the creditor acquired a lien upon the prop-
erty by judgment and execution.

While said act does not in terms require an immediate filing of a chattel
mortgage in order to make it valid, prompt and diligent action on the
part of the mortgagee is required.

Where there was a delay of six weeks in filing a chattel mortgage after its
execution, *held*, that in the absence of circumstances rendering the delay
necessary, this was not a compliance with the act; and that creditors of
the mortgagor, whose debts antedated the mortgage and who obtained
judgments after the mortgage was filed and issued executions thereon,
which were levied on the mortgaged property, were entitled to a pref-
erence over the mortgage.

Reported below, 61 Hun, 533.

(Argued October 6, 1892; decided January 17, 1893.)

APPEAL from judgment of the General Term of the Supreme
Court in the first judicial department, entered upon an order
made November 13, 1891, which modified, and affirmed as
modified, a judgment in favor of plaintiff, entered upon a
decision of the court on trial at Special Term.

This was an action brought by plaintiff, among other things,
to have a chattel mortgage, executed by the firm of Barr &
Miller to the defendants, George A. Gane and Thomas T.
Gane, declared void, and the lien of certain judgments, recov-
ered by plaintiff against said mortgagors, declared prior
thereto.

The facts, so far as material, are stated in the opinion.

*Thomas J. McKee* for appellants. The justice at trial hav-
ing found as a fact from the evidence produced before him,

"that the debts for which the said several judgments were obtained and the said executions issued were all in existence at the time of the making of said mortgages and of such default in said mortgagees in filing said chattel mortgages," makes the case conclusive against the judgment rendered by the justice and affirmed by the General Term. (*Thompson* v. *Van Vechten*, 27 N. Y. 568.) The debts represented by these promissory notes having been created or contracted previous to the making and delivery of the mortgages, the non-filing of the mortgages previous to November 7, 1889, does not render them void as against the claims of the plaintiff, these claims not having been put into judgment before the filing of the mortgage. (*Thompson* v. *Van Vechten*, 27 N. Y. 581; *Parshall* v. *Eggert*, 54 id. 22; *Stewart* v. *Beale*, 7 Hun, 416; 68 N. Y. 629; *Kitchen* v. *Lowery*, 127 id. 59; *Tremaine* v. *Mortimer*, 128 id. 21.)

*Fred. W. Hinrichs* for respondent. The language of Laws 1833 (Chap. 279) is very clear as to the necessity of an immediate transfer of possession or an immediate filing, in the case of chattel mortgages, in order to make the mortgage liens of any validity against creditors. (*Parshall* v. *Eggert*, 52 Barb. 373; *Thompson* v. *Van Vechten*, 27 N. Y. 581.) That the plaintiff is right as to his contention is clear from the language of the act itself. It speaks of creditors generally, and not of creditors whose claims arose before or after the execution of a chattel mortgage, nor of creditors whose claims were absolute or contingent. (*Clark* v. *Gilbert*, 10 Daly, 316; *Keller* v. *Paine*, 107 N. Y. 88.) No such limitations as are applied to purchasers are imposed as to creditors by either act. (Thomas on Chattel Mort. § 325; *C. Co.* v. *Damon*, 48 Hun, 509.) It is entirely immaterial as to whether the creditor had any knowledge or notice of the mortgage and its filing at the time he obtained judgment and levied. The question of notice applies only to subsequent purchasers and mortgagees. (Jones on Chat. Mort. [3d ed.] § 318; Thomas on Chat. Mort. § 325; *Stevens* v. *B. & N. Y. C. R. Co.*, 31 Barb. 590; *Best* v. *Staple*,

61 N. Y. 71, 78, 79; *F. L. & T. Co.* v. *Hendrickson*, 25 Barb. 484.) Where the assets in question are leviable under execution, the judgment creditor need not have his executions returned unsatisfied before filing his bill. (*Wilcox* v. *Payne*, 8 N. Y. Supp. 407, 408; *McElwain* v. *Yardley*, 9 Wend. 549; *Steffin* v. *Steffin*, 4 Civ. Pro. Rep. 179; *McElwain* v. *Willis*, 9 Wend. 549; *Stewart* v. *Beale*, 7 Hun, 414.) There is nothing in the point urged by appellants at Special Term that plaintiff did not become assignee of the claims against Barr & Miller or their creditors until after the chattel mortgages had been filed. (*Hender* v. *Walther*, 9 N. Y. Supp. 926; *Best* v. *Staple*, 61 N. Y. 78.)

ANDREWS, Ch. J. This is a contest between the plaintiff, a judgment and execution creditor of the firm of Barr & Miller, and the defendants George A. Gane and Thomas T. Gane, mortgagees of chattels, as to priority of lien.

In January, 1890, the plaintiff recovered judgments against Edward Barr and Herman C. Miller, upon notes made by the firm of Barr & Miller during the year 1889, but prior to September 25, 1889, and which matured in October, November and December of that year. Executions were issued upon the judgments, and levied upon certain machinery of Barr & Miller, then in their possession. On September 25, 1889, Barr & Miller executed to the defendants, George A. Gane and Thomas T. Gane, a chattel mortgage on the same machinery, subsequently levied upon under the plaintiff's execution, to secure the payment of $2,500 on demand. This mortgage was not filed until November 7, 1889. The *bona fides* of the debts of the respective parties, is conceded. It is also conceded that there was no change in the possession of the machinery, but it remained in the possession of the mortgagors from the execution of the mortgage until taken by the sheriff under the executions in favor of the plaintiff. The sole question is whether the mortgage of the defendants is valid as against these executions.

It is claimed in behalf of the plaintiff, that he was a creditor

of Barr & Miller, within section 1, chap. 279, of the Laws of 1833, and that the mortgage is void as to him, by reason of it not having been filed until November 7, 1889, six weeks after its execution. It is claimed in behalf of the defendants, that the word "creditors," in the act of 1833, only applies to a person whose debt originated after the execution of the mortgage, and during the default in filing, and that by the true construction of the act a mortgage of chattels is not void for an omission to file the same, as against a creditor whose debt antedated the execution of the mortgage, or at least, that it is valid as against an antecedent creditor, provided it is filed before he acquires a lien upon the mortgaged property.

It is to be observed that the limited meaning of the word "creditors" in the act of 1833, insisted upon in behalf of the defendant, has no support in the literal reading of the act. The first section declares that a mortgage of chattels which shall not be accompanied by an immediate delivery and an actual and continued change of possession of the things mortgaged, "shall be absolutely void as against the creditors of the mortgagor and as against subsequent purchasers and mortgagees in good faith, unless the mortgage or a true copy thereof shall be filed as directed in the succeeding section of the act." There is nothing in the language of the section confining the meaning of the word "creditors," or restricting its natural sense, or which indicates an intention to distinguish between a creditor who became such before, and one who became a creditor after the execution of the mortgage. The section speaks of "subsequent purchasers and mortgagees." There was a very good reason for this, since a prior purchaser or mortgagee would stand on his paramount right and needed no protection or would have the means of protection against a subsequent mortgage. The use of the word "subsequent" as applied to purchasers or mortgagees may not be of great importance in ascertaining the meaning of the word "creditors," but it indicates that the legislature had in mind, and expressed in respect to one class of persons, to be protected by the statute, the time when their rights accrued with reference to the execution of the mortgage.

The act of 1833 was supplementary to the provisions of the Revised Statutes relating to fraudulent sales and mortgages of goods and chattels. By 2 Rev. St. 136, section 5, a sale, assignment or mortgage of goods or chattels, where possession is retained by the vendor, is made presumptively fraudulent and void "as against the creditors of the vendor, or the creditors of the person making such assignment, or subsequent purchasers in good faith," using substantially the same language as did the statute of 1833. The following section (6) defined the meaning of the word "creditors," used in section 5, declaring that "the word creditors, as used in the last section, shall be construed to include all persons who shall be creditors of the vendor or assignor at any time whilst such goods or chattels shall remain in his possession or under his control." The act of 1833 is in *pari materia* with the provisions of the Revised Statutes, but added additional protection against fraudulent mortgages of chattels by requiring them to be filed, and making the presumption of fraud from the retention of possession by the mortgagor conclusive instead of rebuttable, as under the Revised Statutes, unless the mortgage should be filed as therein provided. The word "creditors" in the section of the Revised Statutes (§ 5), as defined by section 6, plainly includes all creditors who are such whilst the goods or chattels remain in the possession of the vendor or mortgagor, irrespective of the time when they became such, that is, whether before or after the sale or mortgage. There is, we think, much force in the view taken by the Supreme Court in the fifth department (*Vreeland* v. *Pratt*, 17 N. Y. Sup. 307), DWIGHT, J., writing the opinion, that the word "creditors," in the act of 1833, has the same meaning as in the section of the Revised Statutes referred to, and that these sections may be resorted to, if any doubt exists, to explain the meaning of the word in the act of 1833.

The argument, from the policy of the act of 1833, to the effect that it had for its object the prevention of the setting up of secret mortgages against persons dealing with the mortgagor on the faith that his property is not then incumbered,

and that creditors whose debts were contracted before the
execution of the mortgage were not misled, because at the
time the credit was given no mortgage was in existence and,
therefore, they are not within the purview of the act, ignores
the broad and unqualified meaning of the word " creditors "
used in the statute.    In interpreting a statute its object and
policy, where the meaning is ambiguous, may be resorted to
in aid of the interpretation, and is frequently of great import-
ance.    But in recent times courts are less disposed than form-
erly to depart from or qualify the plain words of a statute in
favor of what is termed an equitable construction, in order to
take particular cases out of its operation upon some supposed
view of policy not indicated in the act itself.

It was the plain purpose of the act of 1833, disclosed on
its face, to require publicity to be given to chattel mortgages
for the protection of the claims of persons mentioned therein.
It is undoubtedly true that one and perhaps the most import-
ant purpose of the act, so far as it applies to creditors, was to
protect persons giving credit to the mortgagor in ignorance of
the existence of a mortgage upon his property.    But the leg-
islative policy was broader than this single purpose.    It is
impossible to say that only creditors who became such during
the existence of a mortgage may be injured by keeping the
mortgage secret.    It certainly is not improbable that in many
cases antecedent creditors may be lulled into security and for-
bear the collection of their debts at maturity, by the apparent
unincumbered possession and ownership by the debtor of
property covered by an undisclosed mortgage.    The statute
prescribes a general rule which must be observed in order to
entitle a mortgagee to assert his lien as against creditors, and,
although a creditor may have notice of an unfiled mortgage at
the time the credit is given, yet it is held that as to a creditor
with notice, such a mortgage will be postponed to the lien of
judgment and execution in his favor upon the debt so con-
tracted.    This was held in *Sayre* v. *Hewes* (32 N. J. Eq. 652),
by the New Jersey court under a statute similar to that in this
state.    The same rule has been declared in our courts.    (*Farm-*

*ers' Loan & Trust* v. *Hendrickson*, 25 Barb. 484; *Stevens* v.
*Buffalo & N. Y. R. R. Co.*, 31 id. 590.) In these cases the
act was extended to cases not within the policy which it is
claimed is the sole reason for the legislation in question.

There are two cases in this court which distinctly held that
the word "creditors" in the act of 1833, embrace creditors
whose debts were created prior to the mortgage. They are
*Thompson* v. *Van Vechten* (27 N. Y. 568) and *Keller* v. *Paine*
(107 id. 83). One of the questions in *Thompson* v. *Van
Vechten*, was as to priority of lien between a mortgage to one
Shaw (on a vessel) executed February 25, 1854, and not filed
until July 12, 1854, and never refiled, and a lien by execution
upon a judgment in favor of one Schoonmaker against the
mortgagor, recovered March 30, 1855, on a debt which was
contracted January 9, 1854, before the execution of the mort-
gage. It was held that lien of the execution had priority,
because of omission to refile the mortgage pursuant to the third
section of the act of 1833, which declares that a mortgage
filed in pursuance of the act shall cease to be valid " as against
the creditors of the person making the same, or against subse-
quent purchasers or mortgagees in good faith," unless refiled,
etc. It is plain that the word "creditors" in the third section
has the same meaning as the same word in the first section,
and if it embraces antecedent creditors in the one case, it does also
in the other. It may be noticed in passing that Judge DENIO
in considering the question whether an antecedent creditor was
within the protection of the third section of the act, affirmed
this proposition on the ground that "he may give further
time to payment or omit to enforce his demand if he finds
that the lien of the mortgage is not kept up, where he would
have acted differently upon learning that it was continued," a
reason which would seem to be equally applicable where the
default was in not filing the mortgage originally. The case
of *Keller* v. *Paine*, was a contest between the mortgagee of a
canal boat and an attachment creditor. The mortgage was
executed in Pennsylvania, March 24, 1881, and was immedi-
ately sent by an agent of the mortgagee to be filed in the

proper town clerk's office of the town where the boat lay, the mortgagor and mortgagee being nonresidents.   The mortgage was filed in the town clerk's office March 25, 1881, but was not filed in the auditor's office as required by chapter 412, Laws of 1864.   The boat was attached by a creditor of the mortgagor for a debt existing prior to the mortgage and the attachment was levied on the same day (March 25, 1881), but a short time before the filing of the mortgage in the town clerk's office.   It was held that the mortgage was void against the attaching creditor, both under the statute relating to chattel mortgages and the act of 1864.   This is an adjudication that the word " creditors " in the act of 1833, embraces creditors whose debts arose prior to the mortgage. We therefore conclude upon the language of the act and upon authority that the plaintiff was a creditor within the act, although his debt existed when the mortgage to the defendants was executed.

A simple contract creditor is as much within the protection of the statute as a creditor whose debt has been merged in a judgment.   This was held in *Southard v. Benner* (72 N. Y. 424) in respect to the meaning of the word " creditors " in the section of the Revised Statutes relating to fraudulent sales, assignments or mortgages of goods and chattels.   The same point was adjudged as to the meaning of the same word in the statute of 1833, in the case of *Thompson* v. *Van Vechten (supra)*.   There was a question in that case of priority of lien as between the Shaw mortgage, and the levy of an execution on a judgment in favor of the Westchester County Bank, recovered March 16, 1855, upon a debt which arose June 10, 1854, during the time when the omission to file the mortgage existed.   Judge DENIO writing the opinion, referring to the argument that the word " creditors " in the statute of 1833, embraces only creditors who obtain judgment and execution during the default in filing the mortgage, said that if this were so the act would not in many cases accomplish any beneficial purpose.   The mortgage, he observed, cannot be legally questioned until the creditor clothes himself with a judg-

ment and execution, or with some legal process against the property, for creditors cannot interfere with the property of the debtor without process. (See also *Southard* v. *Benner*, *supra*.) The simple contract creditor runs the risk of having his remedy to assail the mortgage defeated by a *bona fide* transfer of the property by the mortgagor to the mortgagee in payment of the mortgage, before he has obtained judgment and execution, or any lien on the property. (*Kitchen* v. *Lowery*, 127 N. Y. 59.)

It remains to be considered whether the failure to file the mortgage to the defendants for six weeks after its execution lets in the lien of the executions on the judgments in favor of the plaintiff, obtained after the filing of the mortgage, and gives them a preference over the mortgage. The 2d section of the act of 1833 prescribes how and where chattel mortgages shall be filed, but it does not in terms prescribe the time within which this is to be done. The purpose of the filing is indicated by the last clause of the section, which directs that the mortgages, when filed in the proper offices, shall "be kept there for the inspection of all persons interested." While the act does not in terms require an immediate filing of a mortgage in order to make it valid against creditors or subsequent mortgagees or purchasers, the purpose of the act can only be satisfied by prompt and diligent action on the part of the mortgagee in filing his mortgage. The filing stands as a substitute for immediate delivery and an actual and continued change of possession of the property, and avoids the conclusive presumption of fraud which would otherwise attach to the instrument under the act of 1833 in the absence of delivery and a change of possession of the mortgaged property. Some time will necessarily elapse between the execution and filing of the mortgage. Where it appears that due diligence was exercised in filing the mortgage, and there was no unnecessary delay and no actual intervening lien has been acquired, there would seem to be no ground upon which subsequent lien holders could question the validity of the mortgage under the statute of 1833. The filing under these circumstances

would be immediate and make the mortgage valid as against liens subsequently acquired. But a delay of six weeks in filing the mortgage is not a compliance with the act. There were no circumstances rendering so long a delay necessary. There can be no doubt that if during the delay in filing, a lien had been acquired by a creditor, the mortgage as to such lien would be void. The mortgage was, however, filed before the plaintiff's judgments and executions were obtained. This did not restore the validity of the mortgage as against creditors whose debts were in existence during the default in filing the mortgage, although judgments or executions were not obtained until after the mortgage was in fact filed. This was also one of the points decided in *Thompson* v. *Van Vechten* (*supra*) in awarding priority to the Westchester County Bank judgment over the Shaw mortgage. The debt to the bank was created intermediate the execution and filing of the mortgage. The bank judgment was obtained March 16, 1855, and execution levied March 17, 1855. It was claimed that the delay in filing the mortgage was only available to creditors who obtained judgments and executions during the period of delay. But this claim was overruled. (See also *Marsden* v. *Cornell*, 62 N. Y. 215). It was in discussing this point that Judge Denio stated that the object of the act of 1833, was to protect persons dealing with the mortgagor, without knowledge of the existence of a secret lien on his property. This was doubtless one of the purposes, but as has been said, not the sole purpose of the act. Judge Denio in dealing with the question of priority between the Shaw mortgage and the Schoonmaker execution indicates himself a broader purpose. He held that the omission to refile the mortgage made it void against the Schoonmaker judgment and execution founded on a debt antedating the mortgage, because such a creditor "may give further time of payment or omit to enforce his demand if he finds the lien of the mortgage is not kept up."

The conclusion we have reached in this case would have justified the court in the case of *Thompson* v. *Van Vechten* in sustaining the priority of the lien under the Schoonmaker

execution, on the ground of the original default in filing the mortgage. But having found another ground for sustaining the priority of the lien, this point was not discussed or decided.

We are of opinion that the judgment below proceeded upon a true construction of the act of 1833, and it should, therefore, be affirmed.

All concur, except MAYNARD, J., not voting.

Judgment affirmed.