159 F.Supp. 497 (1958)
In the Matter of Charles DI PIERRO, d/b/a Trade Winds Market, Bankrupt.
No. 4-89.
United States District Court D. Maine, S. D.
January 31, 1958.
*498 The opinion of Referee in Bankruptcy Poulos follows:
This matter comes before this Court upon a motion for summary judgment filed by the National Cash Register Company, on the ground that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law on its petition to reclaim.
The facts, as they appear from the pleadings, are as follows: The National Cash Register Company sold a cash register to Charles DiPierro under a conditional sales contract, dated November 12, 1954. This contract was not recorded until January 7, 1955, some fifty-six days after its execution. On March 20, 1956, Mr. DiPierro initiated bankruptcy proceedings and had at least one general creditor whose claim originated during the interval that the contract remained unrecorded and was provable under the Bankruptcy Act. The cash register was in his possession at the time of the filing of the petition in bankruptcy.
The trustee in bankruptcy relies exclusively upon Section 70, sub. e[1] of the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e contending that he has the power to avoid the conditional sales contract involved in this matter because there was a creditor whose rights he seeks to assert who could have avoided the security transaction under the laws of this state.[2]
*499 Under Section 70, sub. e of the Bankruptcy Act, the trustee in bankruptcy has the power to avoid any transfer which could have been avoided by any creditor of the debtor under applicable state or federal law had not bankruptcy intervened. The trustee does not possess an independent power of avoidance, but may act only upon the rights of at least one creditor having a provable claim in bankruptcy against whom the transfer or obligation was invalid under such law. If, for any reason, under the laws of the state, the action could not be maintained by the creditor at the time of bankruptcy, the same disability will bar the trustee. Davis v. Willey, D.C., 263 F. 588, affirmed 9 Cir., 273 F. 397; Baldwin v. Kingston, D.C., 247 F. 163, affirmed 3 Cir., 257 F. 554; see also, 4 Collier on Bankruptcy 14th Ed., Sections 70.71, 70.90. Thus, for example, where the creditor's remedy is barred by the statute of limitation prior to bankruptcy, the trustee is likewise barred. Heffron v. Duggins, 9 Cir., 115 F.2d 519.
Section 70, sub. e prescribes no conditions or time limits within which transactions are deemed voidable. It merely incorporates the applicable state or federal law in this regard. Consequently, the four months' or one year's limitations established by sections 60 and 67 are inapplicable in a suit under Section 70, sub. e, 11 U.S.C.A. §§ 96, 107, 110, sub. e. Stellwagen v. Clum, 245 U. S. 605, 38 S.Ct. 215, 62 L.Ed. 507. And regardless of whether the transfer is voidable only as to a single creditor, it may nevertheless be avoided by the trustee in toto for the benefit of all creditors. Moore v. Bay, 284 U.S. 4, 52 S.Ct. 3, 76 L.Ed. 133.
Since the rights of the creditor are determined under state law, the problem in this case resolves itself into a consideration of the meaning and effect of the Maine conditional sales recording statute.[3] Specifically, the issue is whether a general creditor, whose rights the trustee in bankruptcy seeks to assert, could prevail over the conditional sales vendor by obtaining a lien on the property subsequent to the date of recording based upon an antecedent cause of action.
While the courts of this state have never determined this question, the Supreme Judicial Court of Maine has ruled that a chattel mortgage is invalid against a general creditor who attaches subsequent to the date of recording on a cause of action arising prior to that time. Production Credit Association v. Kent, 143 Me. 145, 56 A.2d 631. Hence, if a chattel mortgage were involved in this matter rather than a conditional sales contract, the position of the trustee in bankruptcy would be correct. But the decision in the Kent case was reached only because of the express language in *500 the chattel mortgage statute concerning the status of creditors.
After stating that a mortgage is not valid "against any person other than the mortgagor" unless and until recorded within 20 days from its date of execution, the chattel mortgage statute reads as follows:
"If * * * said mortgage or a memorandum thereof is recorded subsequent to said period of 20 days, it shall be valid * * * against attachments made subsequent thereto, based upon causes of action arising subsequent thereto * * *" R.S. of Me.1954, Ch. 178, Sec. 1.
Without this provision, it would appear that a chattel mortgage would be absolutely void against all creditors, if it were not recorded within twenty days. Apparently for this reason, the legislature delineated the status of chattel mortgagees and third persons where there was a recording beyond the twenty day period, specifying against whom the contract would be valid. As the provision reads, it is plainly inferable that the legislature intended to distinguish between subsequent attachments "based upon causes of action arising subsequent" to the recording and those arising prior to the recording of the contract. And the Maine Court, interpreting this provision strictly, concluded that creditors with claims arising prior to the recording were not excluded from taking advantage of the late recording. Production Credit Association v. Kent, supra.
Similar provisions, however, do not exist in the conditional sales statute. It does not specify any time within which a contract must be recorded in order to be valid against other creditors. Nor is there any special mention of the status of attaching creditors who attach subsequent to the date of recording or of the significance of whether their attachments are based upon causes of action arising prior or subsequent to the date of recording.
By itself, the difference in the statutes does not resolve the pending issue because other jurisdictions, under statutes which do not specifically prescribe the status of creditors, have determined that a delinquent recording of a chattel mortgage is ineffectual against prior creditors. Karst v. Gane, 136 N.Y. 316, 32 N.E. 1073; Osco Motors Corp. v. Martin, 137 N.J.Eq. 433, 45 A.2d 454; American Book Co. v. Chapman, 119 Mo.App. 275, 95 S.W. 957. Such decisions are not inconsistent with the result reached in Production Credit Association v. Kent, supra.
The leading authority in this regard is Karst v. Gane, supra. Like the Maine conditional sales act, the New York chattel mortgage statute does not specify the time within which the mortgage should be recorded. In aid of the interpretation, the New York court utilized the object and purpose of the statute, as indicated in the act itself, and decided that it contemplates a recording within a reasonable time in order for the contract to be valid. The Court concluded that a recording beyond a reasonable time was delinquent and did not restore the validity of the mortgage against creditors whose debts were in existence during the default in filing the mortgage, the theory being that they were lulled into a false sense of security by the delay.[4]
According to the literal terms of the Maine conditional sales statute, there is no expression which would indicate a purpose that could only be satisfied by prompt and diligent action on the part of the conditional sales vendor in filing his contract, such as was found by the Court *501 in Karst v. Gane, supra. The statute merely provides that the contract remains invalid unless recorded. Without any reference to a time limitation, either by its explicit terms or implied purpose, it would seem that the legislature intended to provide the conditional sales vendor an indefinite time in which to record his contract. Comparing the two Maine statutes, it is inconceivable that a tardy recording would render the contract absolutely void, both as to antecedent and subsequent creditors. Because, were a contract totally invalid if recorded beyond a reasonable time after its execution, the legislature undoubtedly would have stated the effect of a delinquent recording, as it did in the chattel mortgage statute regarding recordings after the twenty day period.
Moreover, a survey of Maine decisions reveals that during the period that the contract remains unrecorded, any third person may treat the conditional sales purchaser as the owner of the property. Gould v. Huff, 130 Me. 226, 154 A. 574; Mac Motor Sales, Inc., v. Pate, 148 Me. 72, 90 A.2d 460; Muskin v. Lazarovitch, 106 Me. 353, 76 A. 702. There is no restriction as to the beneficiaries who are protected by the act, and the interests acquired by them are superior to the claims of general creditors and also rights of the conditional sales vendor. Maine Acceptance Corp. v. Sheehan, 129 Me. 485, 149 A. 833; Randall v. Sullivan, 108 Me. 571, 82 A. 1011. Therefore, when the conditional sales contract is ultimately recorded prior to the general creditor's becoming an attaching or other lien creditor, it would appear that the recording would have the effect of establishing a title interest in the conditional sales vendor, thereby depriving the general creditor of the right thereafter, except under certain circumstances, to regard the conditional sales purchaser as the owner of the property.
Under this analysis, the absence of any specific terms delineating the rights of creditors becomes highly significant, especially in view of the basis of the Kent decision. Regardless of what might result in a more effective commercial policy for the purpose of promoting prompt recordings, this Court must interpret the Maine statute as it is written. It cannot properly depart from or qualify the plain words of a statute in favor of what is considered an equitable construction. Whatever purpose a statute has must be indicated by the act itself. And as already mentioned, the conditional sales statute is utterly empty as to any expression from which it could be determined that antecedent general creditors may prevail over conditional sales vendors by acquiring a lien on the property subsequent to the date of recording. Without any such indication, this Court believes that it would be clearly beyond its authority to rule in their favor. While it is unfortunate that different rules prevail in Maine as to the rights of creditors under chattel mortgages and conditional sales contracts, a uniform policy can be attained in this regard only by further action of the legislature.
Although the authorities regarding the consequences of undue delay in the recording of security instruments are in hopeless conflict throughout the nation, the decision reached by this Court is consistent with the general doctrine that exists with regard to both conditional sales and chattel mortgages. 3 Jones, Chattel Mortgages and Conditional Sales, Bowers Edition, Section 1070; 1 Ibid., Sections 245 and 247d;[5] *502 and, 78 C.J.S. Sales § 582 b. See also Barber v. Reina Nash Motor Co., 72 Wyo. 65, 260 P.2d 928, which cites many other decisions which conform to the general doctrine.
In conclusion, and by way of a summary, a conditional sales vendor has an indefinite period of time in which to record his contract. Generally, during that period, his rights are unaffected unless a creditor acquires a specific lien on the property before the recording, or establishes that the conveyance was fraudulent. But it is conceivable that a situation may arise sufficient to invoke the principles of estoppel where there is an undue delay in recording. See Ward v. Parker, 128 Iowa 124, 103 N.W. 104; 43 Harv.L.Rev. 1309. Neither fraud nor estoppel, however, was alleged or established in this matter. Also, although it is possible that the contract may be impeached as a voidable preference under the bankruptcy laws, that doctrine is not involved in this case because the recording occurred long before four months prior to the filing in bankruptcy. In re Burton, D.C., 120 F. Supp. 148.
Therefore, since the conditional sales contract in this case was not voidable for any reason by any creditor of the bankrupt at the time bankruptcy proceedings were commenced, it is not null and void as against the trustee in bankruptcy. Hence, upon the undisputed facts, the National Cash Register Company should prevail on its petition to reclaim.
It is accordingly Ordered, Adjudged and Decreed that the motion of the National Cash Register Co. for summary judgment on its petition to reclaim a cash register sold to the bankrupt be and hereby is
Allowed.
Morris Greenberg, Portland, Me., for trustee.
Sidney W. Wernick, Portland, Me., for National Cash Register Co.
GIGNOUX, District Judge.
This matter comes before the Court on the petition of the trustee in bankruptcy for review of an order of the referee in bankruptcy dated October 24, 1957 granting a motion for summary judgment filed by National Cash Register Company on a petition to reclaim.
The referee's opinion fully states the facts and, in the view of this Court, is entirely correct in its conclusions as to the law applicable thereto. This Court has nothing to add to what the referee has said except to comment upon his suggested interpretation of the rights of a trustee in bankruptcy under § 70, sub. c of the Bankruptcy Act. The trustee, in defending against the motion for summary judgment below and in support of this petition for review, has relied exclusively upon § 70, sub. e of the Bankruptcy Act, and this Court deems it unnecessary to discuss the rights of a trustee under § 70, sub. c of the Act or the interpretation of such rights in Constance v. Harvey, 2 Cir., 1954, 215 F.2d 571, certiorari denied, 1955, 348 U.S. 913, 75 S. Ct. 294, 99 L.Ed. 716, and Conti v. Volper, 2 Cir., 1956, 229 F.2d 317. With this exception, the opinion of the referee is adopted as the opinion of this Court, and the order of the referee is affirmed.
NOTES
[1] Section 70, sub. e, par. 1 reads as follows: "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this Act which, under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this Act, shall be null and void as against the trustee of such debtor."
[2] By virtue of Constance v. Harvey, 2 Cir., 1954, 215 F.2d 571, certiorari denied 1955, 348 U.S. 913, 75 S.Ct. 294, 99 L. Ed. 716, and Conti v. Volper, 2 Cir., 1956, 229 F.2d 317 there is a cloud on the distinction between the rights, remedies, and powers of the trustee under section 70, sub. c and the derivative rights enjoyed by the trustee under section 70, sub. e of the Bankruptcy Act. Placing the trustee in the position of an ideal hypothetical creditor, these decisions permit him to relate his status back to the time when the mortgage was filed. Since under Karst v. Gane, infra, a mortgage filed belatedly is invalid against simple contract creditors whose claims were in existence when the mortgage was filed, the trustee in able to invalidate the security transaction without being required to offer proof of the existence of a creditor at the time of bankruptcy as against whom the mortgage was invalid.

This doctrine has been widely criticized and does not seem to have been followed in any other district. Seligson, Annual Survey of American Law, Bankruptcy, 30 N.Y.U.L.Rev. 558 (1955); Seligson, Creditors' Rights, 32 N.Y.U.L.Rev. 708 (1957); Marsh, Constance v. Harvey The "Strong-Arm Clause" Evaluated, 43 Calif.L.Rev. 65 (1955); Levin and Weintraub, The Strong-Arm Clause Strikes The Belated Chattel Mortgage, 25 Fordham Law Review 261. With all due respect to the Second Circuit, this Court concurs with this criticism and therefore follows the traditional interpretation of the rights of a trustee under section 70, sub. e.
[3] Sec. 9, Ch. 119, Revised Statutes of Maine (1954) reads, in part, as follows: "No agreement, that personal property * * * delivered to another shall remain the property of the seller * * * is valid unless * * * in writing * * *; and when so made and signed, * * * it shall not be valid except as between the original parties thereto, unless * * * recorded * * *"
[4] By a later decision, it seems that a late recording does not render the mortgage absolutely void because creditors coming into existence subsequent to the recording take subject to the mortgage. In re Myers, D.C., 19 F.2d 600, Id., 2 Cir., 24 F.2d 349. Also, it should be noted, that because of specific provisions in the New York conditional sales statute, New York applies different rules to conditional sales and chattel mortgages. See Hanna and MacLachlan, Cases on Creditors' Rights, Vol. 1, p. 105.
[5] Section 247d reads as follows: "Outside of a very few jurisdictions where extremely strict statutory provisions exist protecting general creditors from the lien of an unrecorded chattel mortgage, the general statutory prescription is that an unrecorded mortgage is void as against creditors of the mortgagor, or his subsequent purchasers or mortgagees in good faith, and the courts construe creditors in this connection to mean those who have acquired some specific interest in the chattels, by seizure under levy or otherwise, prior to the recording of the mortgage and without notice of it. There are states where the statutes specifically protect only those creditors who have attached or levied execution. The doctrine generally prevails, therefore, that only creditors of the mortgagor who have acquired an interest by fastening a lien upon the property may question the operative effect of an unrecorded mortgage.

"The converse doctrine is the rule of most courts also, that an unrecorded chattel mortgage is an inferior lien to that of a creditor of the mortgagor who has seized the property under attachment or execution, without notice of the mortgage."