GEORGE A. MORRISON, JOHN HERRIMAN, AND JOSEPH C. ALEXANDER v. NATHAN MAYER ET AL.

*Assignment for benefit of creditors—Appointment of receiver and enforcement of trust—Right of creditors to file bill for —Equity practice.*

1. Upon a review of the testimony,—
   *Held*, that a case is made entitling complainants to the relief asked for in their bill.

2. Where, in a suit instituted by creditors to *enforce* the *honest* per-

formance of a *trust* by an assignee, the complainants experienced great difficulty in ascertaining the *actual* facts until the testimony was taken, notwithstanding such facts were within the knowledge of the defendants,—

*Held,* that the discretion of the circuit judge will be tolerated to any extent, by way of allowing amendments necessary to secure the ends of justice and the equitable rights of the parties; and no technical rules either of *pleading* or *practice* will be applied by the appellate court, when the case is fully before it, the effect of which would be to defeat those rights.

3. It is not necessary for creditors to acquire a *lien,* by attachment or otherwise, on the property of an insolvent debtor who has made an assignment of his property for the benefit of his creditors, or any *other* interest therein than that inuring under such assignment, to enable them to file a bill for the removal of the assignee for fraud, the appointment of a receiver, and to secure a faithful enforcement of the assignment trust.[1]

Appeal from Marquette. (Grant, J.) Argued July 6, 1886. Decided October 21, 1886.

Bill filed to remove an assignee, and for other relief. Defendant Nathan Mayer appeals. Affirmed. The facts are stated in the opinion.

*Hayden & Young,* for complainants:

The assignee is the general owner of the assigned property until the trust is performed: *Rodman v. Nathan,* 45 Mich. 607; and he can render ineffectual any suit by a creditor to recover the trust property, and complainants availed themselves of the appropriate remedy, and were the only *necessary* parties complainant: *Wilhelm v. Byles,* 60 Mich. 561.

The amendments to the prayers of complainants' bills were made necessary by the conduct of defendants in the case, for which complainants were in no way responsible; and such amendments are always permissible in the interest of justice: *N. Y. Fire Ins. Co. v. Tooker,* 35 N. J. Eq. 408; *Church v. Holcomb,* 45 Mich. 29; *McMann v. Westcott,* 47 Id. 177; *Pickersgill v. Riker,* 50 Id. 98.

---

[1]See *Wilhelm v. Byles,* 60 Mich. 561 (head-note 1); *Scott v. Chambers,* 62 Id. 533–4.

*J. E. Dalliba* (*Ball & Hanscom*, of counsel), for defendant Nathan Mayer:

Complainants are not in a position to maintain their suit, being neither execution nor attachment creditors: *McKibben v. Barton*, 1 Mich. 213.

The assignee's title was subject to the lien of the mortgages, and his rights were no greater than those of the assignor: *Wakeman v. Barrows*, 41 Mich. 363; *Axford v. Mathews*, 43 Id. 327.

Even judicial sales will not be set aside for mere inadequacy of price, unless the price is so grossly inadequate as to amount to a fraud or imposition: 5 Wait, Act. & Def. 533; *Duncan v. Sanders*, 50 Ill. 475.

Even as between the original parties to a sale, a party alleging fraud must move promptly: *Krueger v. G. R. & I. R. R. Co.*, 51 Mich. 142; *Cunningham v. Fithian*, 2 Gilm. 650; *Cox v. Montgomery*, 36 Ill. 396.

When complainants show themselves entitled to no relief except damages, the bill will be dismissed: 2 Story, Eq. Jur. §§794, 796-7, 799.

All creditors who appear to hold claims are necessary parties to a bill to remove an assignee and appoint a receiver: *Ledyard's Appeal*, 51 Mich. 623.

SHERWOOD, J. This suit was brought by complainants, a firm resident of New York, as creditors of Jacob Kraemer, who had made an assignment, to remove the assignee for fraud, to have a receiver appointed in his place, and secure a faithful enforcement of the trust created by the assignment, and a proper distribution of the property and proceeds when recovered, to the end that complainants may obtain under the trust created what equitably and justly belongs to them.

The defendant Jacob Kraemer, during the year 1882, and for a long time before, was engaged in the business of dealer in dry goods and general merchandising in the city of Negaunee, in the county of Marquette. He also had a branch store in the same business, in the village of Crystal Falls, in said county. On the fourth day of November of that year he was indebted to the complainants in the sum of $678.61, and at

the same time was carrying a stock worth from $30,000 to $40,000, and owned a lot and store building worth $4,000 more. The indebtedness to complainants was not due for sixty days after the last-mentioned date.

On the twenty-sixth of December, 1882, Jacob Kraemer, being indebted to the complainants and other creditors to the amount of about $40,000, made a mortgage to the defendant Charles Kraemer, on the store and lot, for $4,000 (Charles was his brother), and another to Adams & Foley, on the same property, for $2,000. He also, about the same time, executed four chattel mortgages upon his stocks of goods, as follows: The first to H. E. Pearse, a private banker in Negaunee, and one of the defendants, for $5,000; the second to Mayer, Engel & Co., of Chicago, creditors, for $3,573.75; the third to Charles J. Frank, for $1,800; and the fourth to Theodore Kauders, of New York, for $2,573.

On the second day of January, 1883, Jacob Kraemer made a general assignment for the benefit of all his creditors to said Herman E. Pearse.

Mr. Pearse accepted the trust. The assets assigned consisted of the stock of goods in the store at Negaunee, appraised at $23,650; the store building, valued at $6,000; the stock at Crystal Falls, appraised at $8,034.04; and a quantity of goods in the hands of merchants at Ishpeming, then for sale for the assignor, valued at about $301.15,—amounting in all to about $38,000. There were also outstanding accounts, good, doubtful, and bad, to the amount $5,784.37, making a total of assets amounting to nearly $44,000.

The mortgage indebtedness was claimed at this time by the defendants to appear upon the face of the instrument, and amounted to about $18,000, thus leaving a balance of assets over indebtedness to the amount of $26,000.

With the exception of the $301.15, all these assets went into the possession and control of the assignee after the assignment was made.

The assignee claims to have put one Luzerne Frost into the store, who made sale of the goods at retail until about the first of March, 1883, realizing on the sale thus made $8,000. He further claims that at this time the stock had become so reduced that the sales at the store scarcely paid expenses.

About this time Mayer, under the mortgage to Mayer, Engel & Co., for the purpose of foreclosing the same, advertised the goods remaining for sale, but, for some reason, no sale was made under the mortgage, but Mayer consented to a transfer of the stock by the assignee, at private sale, at the sum of $4,050. This sale was made by the assignee, and Mayer himself became the purchaser. The assignee subsequently sold the entire lot of accounts remaining for $150.

Mayer, on the same or following day, sold the entire stock of goods to the defendant Charles Kraemer; Jacob Kraemer making this purchase for Charles, who lived in Milwaukee.

Jacob Kraemer, after the last sale of the goods, as agent of Charles, commenced, as he claims, merchandising and selling goods in Negaunee, purchasing new goods as needed, and carrying on the business the same as before the assignment.

Thus the assets of the trust estate were all disposed of, and as the assignee informed creditors soon thereafter, for the sum of about $12,000; that the real estate was worth no more than the mortgages on it called for; that he was going to pay up the chattel mortgages, and there would be nothing left for the unsecured creditors.

During all this time the real estate had not been disposed of. Jacob had remained in the store, and, to a greater or less extent, was interested in the business.

The unsecured claims at this time amounted to about $37,000.

July 30, 1884, the complainants' claim remaining unpaid, and after the announcement by the assignee that there was no estate of the insolvent left with which to pay it, they brought suit therefor, and obtained judgment in the circuit court for the county of Marquette for the sum of $698.61.

On the twenty-third day of December following, the complainants filed a bill of complaint in this cause, praying for the relief first above specified. Jacob H. Kraemer, Charles Kraemer, and Herman E. Pearse only were at first made parties.

On the twenty-ninth day of June, 1885, a supplemental bill was filed by complainants against thirteen other defendants, among whom was Nathan Mayer, and charging that, since filing the first bill, the last-named defendants, except Anderson, have instituted five attachment suits against the goods and lands of Charles Kraemer, being the same goods assigned to Pearse, and praying that said defendants may be enjoined from further prosecuting proceedings against said goods, and that the receiver to be appointed be directed to take charge of all the goods of the insolvent estate, and make sale of the same under the direction of the court, and that the liens under the pretended levies may be declared fraudulent.

Two amendments to the prayers of these bills were subsequently allowed, to enable complainants to obtain all the relief that the evidence in the case would entitle them to.

All the defendants have been brought in by process, or have appeared voluntarily.

The bills were taken as confessed by Pearse, the assignee.

The case was heard before Judge Grant, in the Marquette circuit, upon the bills and answers, and proofs taken in open court; and after due deliberation, and having seen and heard all the witnesses, he made a decree substantially in accordance with the prayer of complainants' bill, so far as relates to Jacob Kraemer, Charles Kraemer, Herman E. Pearse, and Nathan Mayer, and as to the other defendants the bills were dismissed.

Nathan Mayer alone appeals.

In reviewing this case we have endeavored to give all the testimony its true position, and have indulged all the presumptions raised by the law in favor of these defendants,

but we have been unable to see any grounds upon which Nathan Mayer can make good his positions on the defense.

On the sixth day of July, 1885, the assignee, Herman E. Pearse, was removed, and John Q. Adams, of Negaunee, was duly appointed receiver of the insolvent estate.

July 20, 1885, the circuit judge, at the request of the defendants, and upon their depositing $2,000 with the register of the court to satisfy the complainants' and other like claims, made an order dissolving the injunction.

In this situation was the case when the testimony was taken. It would be a laborious task, and an equally useless one, to give even a synopsis of the evidence in the case, and we shall therefore content ourselves with stating briefly the impressions it has made upon our minds, and this may be sufficiently done while considering some of the legal questions raised by the learned counsel for the defendant Mayer.

He claims, first, that neither of the bills, nor both together, make a case for the complainants against the goods levied upon under defendants' executions.

We do not take this view of the case. The two bills, taken together, allege a scheme of fraud, carried on and conducted by Jacob Kraemer, his brother Charles, his banker and assignee, Pearse, and Nathan Mayer, by which the creditors of Jacob, to the amount of $37,000, shall be compelled to accept less than $18,000 in full for their claims, and, in case of refusal, the secured creditors shall be paid in full, and the remainder nothing, at the same time Jacob retaining all the property purchased of these creditors, or the proceeds of such as he had sold, in all amounting to $40,000; that the other defendants are participants in the fraud; and that complainant firm is one of the defrauded creditors, and without remedy at law.

These averments, if sustained by the proofs, not only make a case for the complainants, but entitle them to all the relief they ask.

It was not necessary in this case that the complainants should have any attachment or execution lien upon the property, or any other interest therein than such as inured to them under the assignment, to enable them to take the proceedings they have in this case.

After the assignment was made, and the assignee had taken possession, and subsequently turned over to Jacob the property, he did not thereby divest the property of its trust character; and notwithstanding the assignee had proved unfaithful, and had negotiated a sale at the instance of Jacob to one who was cognizant of, and expected in some way to profit by, the fraud, he could not in that manner destroy the interest of complainants in the insolvent assets.

An act which is fraudulent is not purged of the fraud by the person committing it securing a half dozen or more to aid him in perpetrating the wrong. Such a course frequently embarrasses in detecting the fraud, but it cannot change the character of the business or relieve either from responsibility.

The second position of defendant's counsel is that, if the complainants were in a position to make the claim, they fail totally to show that the sale to Mayer was fraudulent.

This claim of counsel takes us over the entire record. The circuit judge, by his decree, found—

"That the sale of the stock of goods mentioned in the bill of complaint, belonging to the estate of Jacob H. Kraemer, assignor, and in the hands of defendant Pearse, as his assignee, pretended to have been made on the seventh day of March, 1883, by said defendant Pearse to said defendant Nathan Mayer, was fraudulent and void as to complainants, and all other creditors of said Jacob H. Kraemer standing in like circumstances with complainants."

We think the testimony fully sustains this view taken by the circuit judge. He also finds that Nathan Mayer was a party to the fraud, and, as such, liable with the others for the actual value of the goods he pretended to purchase.

It seems quite clear that the fraud in this transaction began at the time the mortgages were made.

The evidence shows that at the time these mortgages were given they did not represent the true indebtedness of Jacob; that the one to Pearse was for $1,000 more than Jacob owed him. The mortgage given to Charles he did not ask for. He was not present when it was made, and did not know that any such mortgage was to be made for him. Pearse was witness to this instrument.

The mortgage to Mayer, Engel & Co., for $3,573.75, is. shown by Jacob's books to be $2,200 too much.

The mortgage given to Frank, Mayer's agent, was really for Mayer, and claimed to be for money borrowed. About the fifth mortgage but little is shown. These mortgages. were all made on the same occasion, and drafted by the same attorney, and, we have no doubt, executed by Jacob for the purpose of reaching a crisis in the near future, and which actually occurred within the next ten days, when the assignment was made.

In the affidavit of Jacob H. Kraemer to his schedules to his assignment, made six days after he made the $5,000 mortgage to his banker and assignee, Pearse, he swears that the true amount due on this mortgage was $5,000. Said Luzerne Frost, who was given charge of the goods at the time the assignment was made by Pearse, was made one of the appraisers chosen by Pearse, and he swears the true value of the mortgage was $5,000. On the ninth day of April following, Pearse swears that Kraemer owed him upon the note, and that there never was owing him upon the same, but $4,042.

There are also some things about the mortgage given to Charles Kraemer, and his connection with the transaction with Jacob, which are not satisfactorily explained, and can be reconciled with difficulty with actual good-faith dealings, and we are not satisfied that the mortgage given to him is a *bona fide* mortgage. Jacob is the acting man, all through the business, for Charles, and, without knowing anything about

his financial standing or responsibility, he turns up in the end the ostensible owner of the property, and allows Jacob to control and deal with it as his own. He does not live in this State, made his appearance but once, although it is said he lived in Milwaukee. He was not sworn in the case, and appears nowhere, except as represented by Jacob.

Mayer was in Negaunee on the sixth of March,.about two months after the assignment was made, ostensibly for the purpose of attending to a sale under the mortgage given to his firm for $3,573.75, and which had been advertised. At that time the proofs show the stock of goods was worth about $20,000. The sale was advertised for the sixth of March, but was adjourned to the seventh, and a public sale was expected.

Mr. Heineman, an agent of three other creditors than the complainants, had some days previously requested the assignee, Mr. Pearse, to contest the mortgage Mayer was then foreclosing on the ground of fraud.· This Pearse did not do, but, instead thereof, or of allowing the property to go to a public sale under the mortgage, he sold at private sale, and in a somewhat private manner, the entire stock of goods and the accounts, amounting in value to over $20,000, to Mayer, for the sum of $4,200; and the testimony tends very strongly to show that Pearse was offered on the same day $4,500 by another party who was there, and ready to bid on the stock. in case a public sale was to be made.

Heineman also testifies that the attorney for the assignee, Mr. Pearse, and assignor, informed him, in the afternoon of the sixth of March, after the sale had been adjourned to the seventh, that Mayer, to whom the mortgages had been assigned, was in Negaunee, and that he wanted to buy the stock in the interest of Kraemer, and had offered $2,500 for it, and that Pearse was friendly towards Kraemer, and would like to have him get the stock back; that on the seventh of March, at the time to which the sale was adjourned, he went· to the store, and Mayer was·there, and informed Heineman.

that he was too late,—that the property had been sold to him by Pearse; and that Kraemer and Pearse were together the rest of the day. When Pearse had the sale adjourned until the seventh of March, Heineman says he promised him that the creditors should have ample notice before any sale of the stock was made. The accounts, sold to Mayer for $150, amounted to $2,899.45, and from which was collected, from March 7 to the following January, $1,448.83.

On the same day these two sales were made to Mayer, he turned the goods out to Jacob Kraemer, who commenced the collection of the old accounts the same day; and, while thus situated, Jacob purchased the same property for his brother Charles of Mayer, and turned over in payment therefor the mortgage he had executed to Charles on the real estate; and now the possession of all the insolvent estate left is owned by Charles, and in the possession of Jacob, from whom it has never been taken.

As is well said by the complainants' counsel in his argument in this case:

"The mortgagor uses the mortgagee's mortgage, which cost nothing, but which, if good, was worth no more than its face, of $4,000, to procure from Mayer $20,000 worth of goods, which Mayer would not sell to Heineman for less than $17,000 the moment after he had bought them."

The foregoing are only a part of the facts appearing in the record showing the fraudulent character of the transactions of the defendants Kraemer, Pearse, and Mayer, by which the entire assets of this insolvent estate have been locked up in the possession of Jacob Kraemer, and his creditors entirely excluded therefrom. A court of equity can never lend its aid to protect frauds of this kind. We only regret that the appeal taken will not permit us to do complete justice in this case. The complainants, however, have not appealed, and they must be content with the relief given by the circuit judge.

The ground taken under the third point of counsel for Mayer has already been sufficiently considered.

The validity of the assignment is not questioned. It is the fraudulent execution of the trust which is enjoined by the court, and a proper compensation for the fraud and damages sustained thereby is the other relief claimed. The complainants have been injured to the extent that they had any interest in the insolvent's estate. That injury, if any has been accomplished, was through fraud and breach of trust, and that gives equity ample and complete jurisdiction in the whole matter.

The amendments made to the complainants' bills to allow relief according to the character and extent of the injury, under the circumstances of this case, were properly allowed, even upon the hearing. The complainants found much difficulty in getting at the actual facts until the testimony was taken and concluded, notwithstanding they were within the knowledge of the defendants. In such a case, the discretion of the circuit judge will be tolerated to any extent, by way of allowing amendments in any respect necessary to secure the ends of justice and the equitable rights of the parties. No technical rules of either pleadings or practice will be applied by this Court, when the case is fully before us, the effect of which would be to defeat the rights of parties.

We think the delay in commencing this proceeding fully excused by the peculiar conduct of the assignee and assignor; but courts will take cognizance of frauds discovered in the action of trustees whenever they can afford any relief, provided their aid is invoked within a reasonable time after such discovery.

The fourth and fifth points in the argument of counsel for the defendant Mayer relate to the alleged insufficiency of the complainants' bill, and want of proof of the alleged complicity of defendant Mayer in the fraud with which he stands charged in the decree.

We think the record furnishes proof beyond question that Mayer knew of the object sought to be accomplished in giving the chattel mortgages, and participated in the scheme of fraud subsequently practiced to place the goods beyond the reach of creditors, and thereby deprive the complainants, and other creditors in like manner situated, from receiving their pay, or any part thereof.

The decree of the circuit court must be affirmed, with costs.

CAMPBELL, C. J., and CHAMPLIN, J., concurred.  MORSE, J., did not sit.