98   237
100   577
98   237
102   546

PETER DAMM AND AUGUST CLUG v. GEORGE H. MASON.

*Chattel mortgage—Notice—Priorities.*

1. How. Stat. § 6193, which voids unrecorded chattel mortgages as against the mortgagor's creditors and subsequent good-faith purchasers or mortgagees, unless accompanied by an immediate delivery and followed by an actual and continued change of possession of the mortgaged property, does not permit a transaction which is in substance a mortgage to have the effect of a sale, however disguised, to the prejudice of parties dealing with the debtor, in the absence of the statutory notice to such parties.[1]

---

[1] For cases holding that certain instruments are *not* covered by the statute, see:

1. *Haug v. National Bank*, 77 Mich. 474, holding that the statute does not apply to mortgages upon enrolled and licensed vessels, which are required by act of Congress to be recorded in the office of the collector of customs where the vessels are registered or enrolled; and *Robinson v. Rice*, 3 Mich. 235, 248, holding that a similar statute, in so far as it required mortgages upon vessels or boats to be recorded in the town clerk's office, was in conflict with the act of Congress governing that subject, and void.

2. The intentions or suppositions of the parties to an instrument which is in effect a conveyance, to be defeated on the payment of certain indebtedness, as to who should be regarded as holding the title, cannot avail as against subsequent mortgagees in good faith. in the absence of the continued change of possession or notice required by How. Stat. § 6193.

3. Plaintiffs' mortgagor, who was indebted to the defendant in the sum of $947, was desirous of establishing a creamery, dairy, and commission business, and entered into a contract with the defendant, by which, in consideration of his agreement to make advances to the amount of $1,000, including the existing indebtedness, he assigned to the defendant a contract for the purchase of the land on which he was erecting a building to be used in connection with the creamery business, and agreed to insure the building and its contents in favor of the defendant.  The contract provided that the mortgagor should attend to the business for the benefit of the defendant, and according to his instructions, but in his own name, and turn over to the defendant the net proceeds thereof as often as requested, until the advances and interest thereon should be paid.  It was further agreed that the land contract and buildings and improvements, and all apparatus, chattels, and merchandise used in connection with the business, were and should remain the property of the defendant until the mort-

_____

2. *National Bank v. Purifier Co.*, 84 Mich. 364, and *Machine Co. v. National Bank*, 93 Id. 582, holding that the statute applies only to mortgages of goods and chattels capable of delivery, and not to an assignment of open accounts: *Cutler v. Steele*, 93 Mich. 204, 209, and *Haug v. National Bank*, 95 Id. 249, holding that it does not apply to mortgages or conveyances of real estate.

For cases bearing upon the admissibility and weight of evidence showing or tending to show the real character of a given instrument, and when that question should be submitted to the jury, see:

1. *Fuller v. Parrish*, 3 Mich. 211, holding that parol evidence is admissible in a court of law to show that a bill of sale, absolute on its face, was intended as a mortgage; *Cutler v. Steele*, 93 Id. 204, holding that the true character of a mortgage, and the purpose and consideration for which it was given, may be shown by parol; and *Seligman v. Ten Eyck Estate*, 74 Id. 525, holding that it does not require the same amount and strictness of proof to declare an unsealed bill of sale a chattel mortgage or security as it does to determine a deed to be a mortgage.

2. *McKinney v. Miller*, 19 Mich. 142, 149, holding that where a party claims to have purchased securities at very much less than their real value, and the evidence is not clear whether the transaction was a sale or only a mortgage of the securities, very slight circumstances showing that the transfer was not understood at the time to be absolute, but was made to secure the repayment of the sum advanced, may be sufficient to turn the scale.

3. *Cooper v. Brock*, 41 Mich. 488, holding that the mere fact

gagor's agreements were fulfilled, and that on such fulfillment the defendant should relinquish all his rights, title, and interest in said property to the mortgagor. The mortgagor continued to carry on the business, and for a portion of the time with a partner. He made purchases in his own name, added largely to the plant, bought and stocked a farm, and operated it in connection with the business, gave his individual notes, indorsed by others than the defendant, and made payments on the land contract, of all of which facts the defendant had notice. Plaintiffs' mortgage was given 18 months after the execution of the contract, which was not filed in the proper office, and plaintiffs had no notice or knowledge of its existence. Plaintiffs replevied the mortgaged property from the defendant, who claimed ownership by virtue of the contract. And it is held that the contract was a security, merely, and that a verdict should have been directed in favor of the plaintiffs.

Error to Muskegon. (Dickerman, J.) Argued December 14, 1893. Decided December 22, 1893.

Replevin. Plaintiffs bring error. Reversed. The facts are stated in the opinion.

that an instrument contains no terms of defeasance is not decisive in determining the question whether it shall be considered a mortgage or not.

4. *McMillan v. Larned*, 41 Mich. 521, 523, holding that, where the evidence tends to show that a bill of sale was given as a mere security in the nature of a mortgage, the question whether the transfer was absolute or conditional should be submitted to the jury under proper instructions.

5. *Wessels v. Beeman*, 87 Mich. 482, holding that in a suit between a plaintiff claiming personal property under a bill of sale absolute on its face, and a creditor of the vendor, the jury may consider the fact that the vendee filed the bill of sale in the office of the township clerk of the proper township as evidence bearing upon the claim made by him that the transfer was absolute, and not by way of security.

For cases holding that certain instruments *are* mortgages, see:

1. *Davis v. Rider*, 5 Mich. 423, holding that an assignment by a debtor to a creditor of shares of stock, accompanied by the debtor's note, which provides that, if the debt and interest are not paid at maturity, the shares of stock (describing them) thereby assigned to secure such payment are to be deemed and taken as forfeit, is both in form and legal effect a mere chattel mortgage of the stock.

2. *Grimes v. Rose*, 24 Mich. 416, holding that where, after a mortgage given by a tenant on his share of the wheat to be sown and wool produced on the leased premises during the following season has ceased to be operative, the tenant inserts in the mort-

*Jones & Clark,* for appellants.

*Turner, Turner & Turner,* for defendant.

McGRATH, J.   Plaintiffs bring replevin under a chattel mortgage executed to them by one Partrick, dated December 3, 1892.   The mortgaged property was in the possession of Partrick at the date of the mortgage.   On January 16, 1893, the property was taken possession of by defendant upon a writ of replevin, under an instrument dated June 19, 1891, by the terms of which Mason agreed to advance to Partrick money, merchandise, and chattels, not to exceed $1,000, for the purpose of establishing a creamery, dairy, and commission business, to be known as the "Muskegon Creamery," and to be operated by and under the name of H. L. Partrick.   In consideration thereof, Partrick agreed to devote his entire time to the management and operation of said business; to assign to Mason a certain land contract; to insure the building then under course of construc-

---

gage an agreement that it shall cover and be a lien upon his share of the wheat and wool then growing, the mortgage and the agreement should be read together, and construed as creating a new mortgage on the tenant's share of the wheat and wool.

3. *Hurd v. Brown,* 37 Mich. 484, holding that an instrument by which a public contractor assigns to a surety all of his interest in the contract to indemnify him against loss on account of such suretyship, with full power to control the contract the same as if he were the contractor, and to receive all of the money agreed to be paid for its performance, and by which the surety agrees to become responsible for the material furnished, the title to which is to pass to him on its sale to the contractor, who is to receive the profits realized upon the contract, is a security merely, indemnifying the surety against a contingent liability.

4. *Parsell v. Thayer,* 39 Mich. 467, holding that an instrument which transfers to a creditor certain lands, machinery, and lumber, and all book accounts and demands belonging to the debtor, to secure the debt, and authorizes him to take possession of and run the mill and machinery, and dispose of the lumber and other property for the purpose of paying the debt and expenses of management, the remainder to belong to the debtor, is an equitable, if not a legal, mortgage.

5. *Cooper v. Brock,* 41 Mich. 488, holding that a bill of sale in the usual form, reciting a consideration of $1,200, and purporting to sell and convey property worth nearly $3,000, and stating that it is given for the security of moneys advanced by the vendees, is a mortgage.

tion, which was to be used as a store and business room
for said business, and the contents thereof, for the benefit.
of Mason; to attend to all the business matters connected
with said business for the benefit of Mason; and to consult
with Mason regarding all matters connected with said busi-
ness, and to abide by Mason's directions and instructions.
The instrument concluded as follows:

"It is hereby strictly understood that the contract for
the deed before mentioned, the buildings and improvements.
on the foregoing described property, together with all
apparatus, chattels, and merchandise used in connection
with the before-mentioned business, is and shall remain
the property of the said first party until the following
agreement shall have been fulfilled. The said second party
hereby agrees to keep an accurate and legible account of
all the transactions of said business, and to turn over to
said first party all the money which shall accumulate in
said business, after first paying all the necessary running
expenses in said business, so often as said first party may
require, until such time as the entire amount advanced by

6. *Weed v. Mirick*, 62 Mich. 414, holding that an instrument by
which a debtor, in order to secure the payment of the debt, grants,
bargains, sells, mortgages, and conveys to the creditor his stock of
goods, upon the express condition that the creditor shall take pos-
session of the goods, and sell at public or private sale, as he shall
deem best, so much of the stock as may be necessary to satisfy
the debt and costs, and after paying the costs and expenses incurred
in caring for and disposing of the goods, and the debt, with inter-
est, shall return the surplus, if any, to the debtor, is a chattel
mortgage.

7. *National Bank v. Weed*, 89 Mich. 357, holding that a bill of
sale, absolute in form, was intended by the parties to operate as a
chattel mortgage.

8. *Read v. Horner*, 90 Mich. 152, holding that an agreement for
the sale of a building standing on leased land, by which the pur-
chaser agrees to pay the purchase price in specified installments,
and to forfeit all claim to the building in case of a failure to make
such payments, and upon demand deliver up possession to the
vendor, and forfeit all payments made thereon, operates as a
chattel mortgage.

For cases holding that certain instruments are *not* mortgages,.
see:

1. *Holmes v. Hall*, 8 Mich. 66, holding that an instrument by
which the makers of promissory notes given for the purchase
price of a stock of goods agree to pay the notes within 30 days.
from date, and, in default of such payment, authorize the sureties
on the notes to take possession of the goods, and sell enough of

said first party for the establishment of said business, together with interest on the same at the rate of ten (10) per cent. per annum, shall be received by said first party, his heirs, executors, administrators, or assigns.   On the fulfillment of the above contract, the said first party hereby agrees to relinquish unto the said second party all his rights, title, and interest in the above-mentioned property, chattels, apparatus, and business."

On April 1, 1892, Mason and Partrick entered into a supplementary agreement, by the terms of which they mutually agreed—

"That the amount of interest mentioned in the said instrument shall be changed to 8 per cent., in consideration of the second party to pay the same monthly, the first party having advanced $500 more than the instrument calls for, making a total amount advanced $1,500."

Neither of said papers was filed in the clerk's office, nor does it appear that plaintiffs had any knowledge of their existence when the chattel mortgage was given.

---

them to pay the notes, and a reasonable compensation for their services, after which the remainder are to be redelivered to the makers of the notes, is not a mortgage, but only a naked power, giving the sureties no interest in the goods until reduced to possession.

2. *Dalton v. Laudahn*, 27 Mich. 529, holding that a lease, containing a stipulation that the personal property and fixtures placed or to be placed in or on the leased premises shall be liable, and the lease shall constitute a lien or mortgage thereon, to secure the rent reserved in the lease, and authorizing the lessor, in case of non-payment of the rent, to take possession of and sell said property and fixtures in the manner provided in case of chattel mortgages, and to retain from the proceeds of such sale the rent due and to become due on the lease, and the costs of such sale, is not a chattel mortgage; also *Booth v. Oliver*, 67 Mich. 664, and *Iron Co. v. McCann*, 86 Id. 106, to the same effect.

3. *Haynes v. Ledyard*, 33 Mich. 319, 44 Id. 621, holding that a contract by which mortgagors transfer to the mortgagee the crops harvested or growing or to be thereafter raised on the mortgaged property, and the stock thereon, with its increase, excepting the portion required to pay the expenses of raising and harvesting the crops and feeding the stock, and conducting and carrying on the farm generally, which net proceeds the mortgagee agrees to apply upon the mortgages, is not a chattel mortgage, but an agreement under which the land is to be worked for the benefit of the mortgagee, and the crops and stock are to be his.

And see *Reed v. Bond*, 96 Mich. 134, and cases cited in note, as to determining the character of conveyances generally.

It appears from the record that, at the time of the execution of the instrument under which defendant claims to own the property, the title to said property was in Partrick; that Mason did not at that time part with the possession of any of the property covered thereby; that while Partrick had, some time in February preceding, received from Mason a horse, harness, and wagon, yet the testimony clearly shows that the same were purchased by Partrick at and for prices stipulated, and were delivered accordingly, and there is no testimony tending to show that the sale was not absolute and unconditional; that Partrick came to Muskegon in February, 1891, and was then indebted to Mason in the sum of about $312; that said sum was included in said writing as "advances;" that, since February, Partrick had been carrying on the dairy and commission business, and defendant and others had been supplying him with milk at prices agreed upon, and shipping him produce on commission; that Partrick was, on June 19, indebted to Mason on milk account, $232, on produce account, $123, for a horse, wagon, and harness, $180, and, for a loan made in the early part of June, $100; that these items made up the sum of the "advances;" that, since the execution of said instrument, Partrick had continued to carry on the business as before, and for a portion of the time with a partner; that he had made all purchases in his own name, had added largely to the plant, bought a farm, stocked it with horses, cows, and hogs, and operated it in connection with the creamery; that in the course of said business he had given his individual notes, indorsed by persons other than Mason; that the indebtedness to plaintiffs grew out of indorsements for the accommodation of Partrick; that, since June 19, Partrick had made payments upon the land contract mentioned in the writing; and that Mason knew of these purchases, dealings, and indorsements.

In the light of these facts, it is clear that this instrument was intended, and must be treated, as a security, merely. Even as between the parties, the intention is to be gathered, not from the face of the instrument alone, but from the situation of the parties, the surrounding circumstances, and the subsequent conduct relative to the subject-matter. This is not, however, a controversy between the parties to the instrument. The transaction cannot be regarded as a conditional sale of chattels, the title to which was in Mason at the time of the execution of the writing. It is in effect a conveyance by Partrick, to be defeated by the payment of his indebtedness, and, that being its real purpose, the intentions or suppositions of the parties as to who should be regarded as holding the title cannot avail as against subsequent mortgagees in good faith, under the statute. How. Stat. § 6193. This statute does not permit a transaction which is in substance a mortgage to have the effect of a sale, however disguised, to the prejudice of parties dealing with the debtor, in the absence of the statutory notice to such parties. Nor does this record contain any evidence which tends to show that plaintiffs had any knowledge of the execution, delivery, or existence of this writing, or of any claim by Mason of the ownership of the business or property, or any concession by Partrick to the same effect, until Mason took the property under the writ of replevin. There is no pretense that Mason held himself out to the public as the proprietor of said business or as the owner of the property, or that Partrick so regarded or represented him. The fact that plaintiffs knew that Mason was delivering milk and produce to Partrick does not tend to show notice of any such claim as is now set up by defendant, as other parties were also delivering milk and produce, and both Mason and Partrick testify that the milk was furnished by Mason at stipulated prices, and the produce was to be sold on com-

mission, and Mason charged both up to Partrick, and credited him with payments made from time to time. The court should have directed a verdict for plaintiffs.

The judgment for defendant is therefore reversed, and a new trial ordered.

The other Justices concurred.