CITY BANK & TRUST CO. *v.* HURD.

1. INJUNCTION—EQUITY—RESTRAINING ACTION AT LAW.
    Since equity will not enjoin the enforcement of a judgment if there is an adequate remedy at law, the remedy is not usually available against a sale of real or personal property on execution: the jurisdiction is very limited, and attaches only in exceptional cases.

2. SAME—EXECUTION—IRREPARABLE INJURY.

A sale under execution at law will not be restrained by the court of equity if the property subject to levy is not in use or has no peculiar or special value to the proprietor because of association, antiquity, or rarity; the remedy by an action for damages will be presumed to be adequate.

3. CHATTEL MORTGAGES—NOTICE—BONA FIDE PURCHASERS—CREDITORS HAVING KNOWLEDGE—RECORD.

An unrecorded chattel mortgage, not accompanied by an immediate delivery and followed by an actual change of possession, is void as against a creditor of the mortgagor who has actual notice of its existence; although notice is equivalent to filing in the case of subsequent purchasers and mortgagees. 3 Comp. Laws, § 9526; Act No. 258, Pub. Acts 1905. See 4 How. Stat. [2d Ed.] §§ 11407 and 11410.

4. AMENDMENT—EQUITY—PLEADING.

Where it was shown at the hearing that a complainant was entitled to a credit of which it had no previous knowledge, it should have been permitted to amend the bill of complaint for an injunction. Amendments as to matters germane to the case can be allowed at any time in chancery suits, to conform with the proofs, protect the substantial, equitable rights of the parties and secure the ends of justice even in the appellate court.

Appeal from Lake; Withey, J. Submitted November 11, 1913. (Docket No. 88.) Decided March 27, 1914.

Bill by the City Bank & Trust Company against James D. Hurd and others for an injunction. From a decree for defendants, complainant appeals. Modified and affirmed.

*Lucking, Helfman, Lucking & Hanlon,* for complainant.

*A. A. Keiser* and *M. B. Danaher,* for defendants.

STEERE, J. This suit primarily involves the validity of an execution levy on 16 electric motors in the

county of Lake, Mich., as against a foreign unrecorded trust deed, or indenture, in its nature a mortgage, covering all its grantor's then owned and after-acquired real and personal property. Said levy was made at the instance of defendant Hurd herein, who, as plaintiff in an attachment suit entitled *James D. Hurd* v. *Mobile Portland Cement & Coal Company,* recovered a judgment in said Lake county, on October 24, 1911, for $1,637.68, against the defendant, which was a Maine corporation having most of its property and principal place of business in the State of Alabama. Defendants Bates and Wolgamott are, respectively, sheriff and deputy sheriff of Lake county; the latter having made said levy. They are made parties and concerned in this suit only by reason of their official action in that particular.

The motors were part of a cement plant, located in Lake county, which said Mobile Company had bought in January, 1911, of the Great Lakes Portland Cement Company, of Marlboro, Lake county, Mich., and had dismantled in the process of moving it to Alabama for re-erection there. Said Mobile Portland Cement & Coal Company, which was incorporated in Maine, on a liberal scale, with an authorized capital of $6,000,000 and a total authorized bond issue of $3,000,000, gave, on September 1, 1908, a trust deed or indenture in the nature of a mortgage to secure its bonded indebtedness, to the Carnegie Trust Company of New York, as its trustee. This somewhat lengthy instrument conveyed in trust the grantor's property, both real and personal, consisting of lands, mills, coal mines, boats, barges, franchises, etc., "now owned by the company or which may in the future be acquired by it." The Carnegie Trust Company subsequently failed and, it becoming necessary to secure a new trustee, complainant, a corporation organized under the laws of Alabama for the purpose of carrying on a banking and

trust business, was appointed as such trustee. Acting in that capacity, it filed this bill of complaint in the circuit court of Lake county, in chancery, asking an injunction to restrain the sale of said motors under said execution, alleging, amongst other things, that they were "subject to a certain mortgage covering said personal property and held by your orator as trustee," averring as further ground of equitable relief that, if such sale is not restrained, "your orator will be greatly and irreparably damaged, and property in which your orator has an interest and duty to preserve, and worth upwards of $15,000, will be sacrificed on a forced sale for a claim of $1,650."

Aside from those portions of its bill which import its duty as trustee to protect trust property, complainant can scarcely be said to bring itself within the jurisdiction of a court of chancery. The jurisdiction of courts of equity to stay proceedings at law after judgment, though recognized in exceptional cases, is very limited. As a rule, the remedy is not allowed against a sale of realty, nor of personal property on execution where relief is available in a proceeding at law. An adequate remedy at law is said to be the general test. The claim that this levy is excessive is not tenable (1 High on Injunctions [4th Ed.], § 121), and has been abandoned. Neither can the claim of irreparable injury be recognized as a ground for equitable relief by injunction to restrain execution, where, as in this case, the property levied upon is not in immediate use and has no peculiar or special value to the owner by reason of association, antiquity, or rarity, but is a commercial article of easily ascertained market value and can be readily replaced.

Hurd's judgment by attachment was without personal service of process and limited in its scope of execution to the property seized. Assuming that complainant's special rights and obligations as trustee to protect and conserve this property authorize the

filing of this bill to restrain execution, at the threshold of the inquiry we find it undisputed that complainant has failed to take the usual precautions to protect the property of its *cestui que trust* in this State by resort to the provided recording laws.

The trust deed upon which complainant relies as being in the nature of a chattel mortgage covering these motors was recorded in two counties in Alabama, but it is admitted it was never filed and of record in Lake county, Mich. In avoidance of the effect of such omission, it is claimed that Hurd had actual knowledge and notice of the same before the alleged indebtedness on which he recovered said judgment accrued, by reason of his having been an employee of complainant's mortgagor in a clerical and confidential capacity, where he learned of this trust deed and became familiar with its provisions.

The judgment in question was upon a note given for wages earned by Hurd while in the employ of the Mobile Portland Company from November 1, 1910, to May 1, 1911. He was located in the office of the company at Mobile, and states he went there to have charge of the development and operation of the coal properties of the company, and in that connection had access to its books and papers and learned of the trust deed; he helped prepare a prospectus of the enterprise with maps, photographs, etc., with a general statement of its obligations, assets, aspirations, and prospects for public use, which he states was a "gold brick prospectus" and did not mean anything to him. Without going further into the evidence upon that question, it may be regarded as established that by reason of his relations with the company Hurd had knowledge of the trust deed in question and learned of the purchase and proposed removal of the Marlboro cement plant to which the motors belonged.

It is the contention of complainant that the only

purpose of the recording laws is to give notice of title or incumbrances upon property and thereby protect innocent purchasers and creditors who otherwise might deal in ignorance of the facts; that, if the creditor has actual notice, the purpose of the law has been reached, and as to him the situation stands the same as though the recording laws had been observed; and it is urged the settled rule is that an unrecorded incumbrance is good as against all creditors who had not given credit in ignorance of it.

Act No. 258, Pub. Acts 1905, relative to the recording of chattel mortgages, provides (section 10) that—

"Every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the township clerk  *  *  *  where the goods or chattels are located," etc.    (4 How. Stat. [2d Ed.] § 11407.)

The statute further provides that no officer shall receive or file such an instrument in his office unless an affidavit is made stating that the consideration for such instrument was actual and adequate and given in good faith for the purposes stated in the instrument. Every such mortgage ceases to be valid as against creditors at the expiration of one year from the time of its filing, unless an affidavit of renewal is annexed, and filed therewith, which must be done each year to keep it in force. 3 Comp. Laws, § 9526 (4 How. Stat. [2d Ed.] § 11410).

It is not the settled rule to be deduced from numerous decisions of this State that a subsequent creditor with knowledge cannot in law be a creditor in good faith, as applied to an unrecorded incumbrance. This

court has held, in substance, that the statute does not apply to creditors whose claims accrued prior to the execution and delivery of an unrecorded mortgage. *Brown* v. *Brabb*, 67 Mich. 17 (34 N. W. 403, 11 Am. St. Rep. 549) ; *Littauer* v. *Houck*, 92 Mich. 162 (52 N. W. 464, 31 Am. St. Rep. 572) ; *First Nat. Bank of Kalamazoo* v. *Guntermann*, 94 Mich. 125 (53 N. W. 919) ; and *Heenan* v. *Varnish Co.*, 138 Mich. 548 (101 N. W. 806). Language is used in these cases, and others which are cited, giving importance, to a greater or less degree, to notice or lack of notice by a creditor of a nonrecorded mortgage which he is resisting. In certain cases under the circumstances there shown, knowledge has been held to be of controlling importance and equivalent to recording. Numerous cases presenting various phases of the question are found cited in *Brown* v. *Brabb, supra,* and in the footnotes of *Damm* v. *Mason*, 98 Mich. 237 (57 N. W. 123). The latest treatment of, and rulings by this court upon the subject is *People, for use of Esper,* v. *Burns,* 161 Mich. 169 (125 N. W. 740, 137 Am. St. Rep. 466), where it is held settled in this State that actual notice by a creditor of the existence of an unrecorded mortgage is not inevitably a sufficient substitute (to give it priority) for recording the same. After citing numerous cases in which it is held that "a chattel mortgage, where possession is not given, is void as against the mortgagor's creditors, if not put on file in the proper office, even though recorded elsewhere by mistake," the court says:

"But as to subsequent purchasers and mortgagees notice is equivalent to filing. *American Cigar Co.* v. *Foster,* 36 Mich. 368; *Read* v. *Horner,* 90 Mich. 152 (51 N. W. 207). It is well that we keep this distinction in mind in considering this statute, for actual notice to the creditor of the existence of the mortgage does not appear to be sufficient. One who seeks to benefit from the recording laws must incur all risks

of the failure to put his papers duly upon record. * * * An instrument which conforms to the recording laws, and which is recorded, is notice to every one; but an instrument which does not comply with the statute is notice to no one, even if recorded. * * * It was clearly the duty of the mortgagee, if he wished to take advantage of the statute, to see that all its requirements had been complied with, and, if the mortgagee is content, as in this case, to take chances in that regard, and to leave it to the mortgagor, and the mortgagor does not comply with the statutory requirements, then the mortgagee should suffer the consequences, and not the creditor who seeks to collect his judgment."

In that case the court was passing upon the priority of a chattel mortgage predating the judgment, and which, though filed with the proper officer, was not in compliance with the recording law because the requisite affidavit, though attached, was not sworn to until after the levy; but the significance of the opinion, as applied to this case, is that after a review of the authorities the conclusion is reached "that actual notice to the creditor does not appear to be sufficient."

Hurd was not a subsequent purchaser or mortgagee, against which classes notice is squarely held equivalent to filing, but a subsequent creditor in good faith, seeking to recover withheld wages for labor from an employer against whom he had secured a judgment and who owned the property he levied upon. As such employee, he acquired a general knowledge of the instrument in question, a lengthy document, variously designated in the record as an "indenture," a "trust deed," a "mortgage," and a "chattel mortgage," complicated in its nature, involving characteristics of a deed to real estate and a bill of sale of personal property, conveying the title in trust, a mortgage of realty, and a chattel mortgage, with descriptions of numerous kinds of property, and various conditions and provisions, amongst which was the one

that it should apply to after-acquired property. It was executed in the State of New York in 1908, had not only never been filed and recorded in Michigan, but was not entitled to record for the same defect pointed out in *People, for use of Esper; v. Burns, supra.* It was approximately two years old when Hurd went into the employ of the grantor. He learned during the course of his employment of this instrument, and for his employer assisted in preparing a prospectus, claiming the mortgage yet in existence. Assuming that he knew, which he denies, or is presumed to have known, that the instrument covered after-acquired personal property in Michigan, the fact that he acquired knowledge of the instrument through his employment does not estop or put him in any different position in asserting his claim than that of any other creditor with like knowledge. We conclude, with the learned chancellor who heard this suit, that, under *People, for use of Esper,* v. *Burns, supra,* as applied to the circumstances of this case, Hurd ought not in reason to be put in a worse position, nor complainant in a better, than a creditor with knowledge of a chattel mortgage defectively on file and a mortgagee who had actually deposited his mortgage for filing with the proper officer, but failed in some particular to comply with all legal requirements, in which case the mortgagee must suffer the consequences, and not the creditor who seeks to collect his judgment.

It was shown on the hearing that Hurd, at the time he left the employment of the Mobile Cement Company, received as collateral to the note given him for his wages bonds of the company of $4,500 face value, and it is claimed under authority cited that he cannot satisfy his debt out of property pledged as security for such bonds. If he were trying to collect the bonds he held this rule would preclude him; but, under the proofs and pleadings in this record, he is not. He

recovered a judgment on the note evidencing his debt for wages. The bonds were not sued upon. Furthermore, this question is not raised by complainant's bill; but in that connection the testimony disclosed a situation where, under proper pleadings, complainant, as the testimony now stands, is entitled to equitable relief. It was shown on the examination of Hurd, who was called by complainant and examined under the statute relative to calling the opposing party as a witness, that, his note not being paid nor the collateral bonds redeemed according to agreement, he sold the bonds after frequent demands and protest of the note for nonpayment, and there ultimately came into his hands as proceeds of such sale $750. He testified that he first sold them through his attorney to his wife, before starting his attachment suit, for $10, which he credited on the note, and that he later sold them for his wife, for $750, after he had secured his judgment as he recollected it.

On September 26, 1912, the circuit judge filed a written opinion, which was adverse to complainant's case as stated in its bill, but concluding as follows:

"I do not know, and am not able to recall, the state of the pleadings in regard to the $750 which defendant Hurd admits he received by way of his wife, from the bonds of the mortgagor. I am perfectly clear that he ought not to be allowed in a court of equity, or in any other court, to profit by any such barefaced jugglery as that disclosed by his own testimony, and, if the pleadings are proper, or can be made so by amendment, he will be required to apply that money plus legal interest less necessary expenses to the liquidation of his claim. A decree may be settled in accordance with the foregoing."

The pleadings upon which the case was heard did not contain any allegations relative to sale of the bonds and failure to credit the proceeds, which it is claimed was first disclosed to complainant at the hearing; but such conduct comes peculiarly within the

field of equitable action for the protection of trust property, is connected with the transaction to which the pleadings relate, and could very properly have been included in the original bill if then known. The amendment which has been asked for can and should be granted.

On January 8, 1913, a final decree, dated as though signed May 21, 1912, was filed dismissing complainant's bill with taxed costs, and added damages of $286.50 "occasioned by reason of the issuance of said injunction." A petition for leave to amend complainant's bill to include this bond matter, dated December 30, 1912, and noticed for hearing on January 6, 1913, was heard, and on February 17, 1913, denied, because of unreasonable delay; as was also a petition to set aside the decree, allow amendment of the bill, and grant a rehearing, which was filed January 19, 1913, after it was learned, as is claimed, that a decree had been signed and filed. We do not deem it necessary at this time to discuss the merits or demerits of the delay, over which the record is enlarged with correspondence, petitions, and affidavits. We cannot conclude, however, that complainant is entirely to blame, or altogether blameless. The trial judge and respective counsel resided in different parts of the State and away from the county where this case was heard. An apparent misunderstanding has arisen which cannot be allowed to cloud the merits of this case. Hurd should not be permitted to proceed with his levy for the full amount of his judgment without crediting thereon the $750 received from sale of the bonds, less the $10 already credited. Even though questionable delays may intervene, a court of equity in the final adjudication may not lend its aid to profiting by conduct which the trial court has, we think correctly, condemned in emphatic language as fraudulent.

Amendments as to matters germane to the case can

be allowed at any time in chancery suits to conform with the proofs, protect the substantial, equitable rights of the parties, and secure the ends of justice— even in the appellate court. *Morrison* v. *Mayer*, 63 Mich. 238 (29 N. W. 698) ; *Babcock* v. *Twist*, 19 Mich. 516; *Seymour* v. *Long Dock Co.*, 17 N. J. Eq. 169. The amendment proposed by complainant was germane to the controversy and should have been allowed in order to reach equitable and complete results. Complainant is entitled to a reduction of the execution to the amount realized by Hurd on sale of the collateral bonds, upon his own admissions.

On the major issues of the case as before referred to, and also other questions which we regard of minor importance, raised and argued by counsel in their briefs, which have been examined but not reviewed at length, the conclusions reached by the trial court are affirmed.

The case will be transmitted to the court below with directions to set aside the decree previously entered, grant the amendment proposed, and enter a decree which will give complainant relief as to the $740, which should have been credited upon said execution.

On the record as a whole, we conclude that the costs of both courts must go against complainant, excluding, however, the $286.50 which was added for damages occasioned by reason of the issuance of said injunction, which, under the circumstances shown, was not without justification.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.