O'NEIL *v.* BROOKS.

1. CHATTEL MORTGAGES—DEBTOR AND CREDITOR—FILING.
    A creditor, whose claim arose after the giving by his debtor of a chattel mortgage, which was not filed in the office of township clerk, is entitled to assert against such chattels a judgment and execution lien obtained after the mortgage was duly recorded (Act No. 258, Pub. Acts 1905, § 10, 3 How. Stat. [2d Ed.] § 11407) if the conveyance was not accompanied by an actual and continued change of possession of the mortgaged chattels.

2. SAME—CHANGE OF POSSESSION—BAILMENTS.
    Where mortgaged horses were turned over to a creditor

of the owner, to be used at an agreed rate and the same applied on the indebtedness, and there was no evidence that the bailee creditor was to take possession and hold them for the mortgagee of the team, no such change of possession in behalf of the mortgagee was shown as to protect his interest against the rights of a subsequent creditor of the mortgagor without notice.

Error to Marquette; Flannigan, J., presiding. Submitted April 17, 1914. (Docket No. 62.) Decided June 1, 1914. Rehearing denied December 19, 1914.

Replevin by James O'Neil against Arthur Brooks for two teams of horses and their harness. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*J. L. Heffernan (C. F. Button, of counsel), for appellant.*

*W. S. Hill, for appellee.*

STEERE, J. This is an action in replevin, involving two teams of horses and their harnesses, brought here for review from the circuit court of Marquette county, where, upon trial by jury, judgment was rendered on a directed verdict for defendant.

Before, and at the time, the parties to this suit became interested in the property in question it belonged to Reichel Bros., a lumbering firm of Marquette county, whose title defendant subsequently acquired on execution sale. Plaintiff's claim is based upon a chattel mortgage given him by Reichel Bros.

On September 12, 1911, the corporation of A. G. Wells Company commenced an action against Reichel Bros. upon a note given in March, 1911, maturing in July, 1911, and at the same time instituted garnishment proceedings against the Consolidated Fuel & Lumber Company, as garnishees of Reichel Bros. Said fuel and lumber company disclosed that the

horses and harnesses involved were held by it under a contract with the principal defendants, whereby the garnishee defendant had use and possession thereof until satisfaction of a debt due it from the Reichel Bros.; which contract provided that Reichel Bros. were to be credited with the sum of $35 per month for the use of each team and its harness, and that there was at the time of the disclosure yet owing and unpaid upon said indebtedness the sum of $317.19, for which a lien upon said property was claimed by the garnishee defendant.

On December 6, 1911, A. G. Wells Company recovered in the action upon its note a judgment against Reichel Bros. for $311.81 damages and costs. On the concurrent proceedings in garnishment a judgment was entered providing in part as. follows:

"It is hereby determined that at the time of the service of the writ of garnishment in this cause upon said garnishee it had in its possession and under its custody and control the following goods and chattels of the said principal defendants, viz.: One team of horses [describing them] and two sets of heavy double harness, including collars, which said goods and chattels were then and are now held by the said garnishee under a contract with said principal defendants, whereby the said garnishee has a lien thereon and a right to retain possession of said goods and chattels and have the use thereof until the full payment to said garnishee of the sum of $71.69, which constitutes the amount of said lien at the rate of $35 per month for the use of each of said teams and harness."

By said judgment the garnishee defendant was also ordered to deliver said property to the sheriff on demand, to be sold by him to satisfy the execution to be issued upon said judgment, subject to the amount of said lien.

An execution was issued in said garnishee proceedings, reciting the principal judgment, the garnishment, and the garnishee judgment, commanding the

sheriff to satisfy thereunder, out of the property, the amount of the principal judgment and costs in the garnishee proceedings, subject, however, to the lien of the garnishee.

Under this execution the sheriff levied upon said property March 1, 1912, and, after seizure, on the same day made an arrangement with the garnishee defendant, by which the latter gave him a receipt for the property, agreeing therein to hold possession thereof until the 14th of said month, and then turn the same over to him, subject to its lien; that being the day set by the sheriff for execution sale. On that date the sheriff sold said property to defendant, Brooks, as the highest bidder, for the sum of $375, subject to said lien of garnishee defendant, amounting at the date of sale to $17.69. Brooks at that time had also levied an execution upon this property to satisfy a judgment against Reichel Bros. for the sum of $707.98 obtained by him March 8, 1911, with similar ancillary proceedings in garnishment against the same garnishee defendants.

After Brooks secured possession of the property, plaintiff seized it under a writ of replevin, as being property covered by a chattel mortgage dated January 9, 1911, given him by Reichel Bros. to secure the sum of $2,000 which he had loaned them. Said mortgage was not, however, filed for record until January 10, 1912.

On January 14, 1911, after said loan was negotiated, but before the chattel mortgage was delivered, Reichel Bros., with plaintiff's consent, gave possession of this property to the fuel and lumber company, under a contract to turn the same over to the latter, to be worked and used in payment of a debt Reichel Bros. then owed it, amounting to $522; said fuel and lumber company agreeing to credit upon said indebtedness the sum of $70 per month for the use of said property, keep and care for the same, and furnish

food and drivers for said horses while in its possession.

Shortly after the fuel and lumber company received possession of this property under said contract, it further agreed with Reichel Bros. to furnish the latter from time to time certain supplies, the amount of which should be charged in and become a part of the original indebtedness owing from the latter to the former, and did so furnish the same to the amount of $460, of which supplemental agreement plaintiff was informed by Reichel Bros., and to them gave his consent thereto.

The fuel and lumber company retained, used, and worked said property until the entire indebtedness owing it by Reichel Bros. was paid, including the $18 yet due when defendant bought the same on execution sale, after which he took possession, and plaintiff took it from him, after demand, by writ of replevin, claiming right thereto under his chattel mortgage.

After the property was replevied, default was entered by defendant against plaintiff for failing to file a declaration, and before the case came to trial a stipulation was entered into by counsel of record, providing in part:

"* * * That the default of the plaintiff heretofore entered in this cause may be, and the same is, hereby set aside, and the plaintiff allowed to serve copy of his declaration in this cause instanter; * * * that upon the trial of the above-entitled cause it will be admitted that all the proceedings in the case of A. G. Wells Co., a corporation, v. George Reichel *et al.*, principal defendants, and the Consolidated Fuel & Lumber Company, garnishee defendant, and also all the proceedings in the case of Arthur Brooks against the same principal and garnishee defendants, were regular and proper and effective for the purposes thereof, it being the intention hereby to give the said defendant all the benefit that he could derive from such proceedings when regularly and properly carried

through, but not to admit that such proceedings, when so conducted, operated to give to the plaintiffs therein such prior rights in the property seized under the writ in this cause as to enable them, or either of them, to sell the same free of the chattel mortgage lien of this plaintiff thereon, that question to remain to be litigated the same as though this stipulation had not been entered into; said O'Neil not admitting these said plaintiffs did not have notice of his chattel mortgage and rights prior to and after judgment in said garnishee proceedings, either by themselves or agents or attorneys."

As to this stipulation, it is urged by present counsel for appellant that an attorney has no implied power to release errors in the record; that this was entered into under a misapprehension, is but mere admissions of law which the court is not required to act upon if satisfied to the contrary, and ought not to be held binding under the circumstances. Assuming that it will not be, counsel argue at length in their brief against the regularity and validity of the proceedings in the cases mentioned.

Without reviewing in detail the questions there raised, it is sufficient to state that we are not satisfied that the irregularities complained of render those proceedings invalid, and, under this record, we conclude the only serious question for consideration is that of the priority between plaintiff's chattel mortgage and defendant's title under the execution sale.

The trial court held that the lien, by virtue of said garnishee proceedings and judgment, took priority over plaintiff's chattel mortgage, which was unrecorded at the time such lien attached, and therefore directed a verdict in favor of defendant for the value of said property, which, as an issue of fact, was submitted to the jury under proper instructions, resulting in a verdict against said plaintiff in the sum of $641.25.

The recording law relative to chattel mortgages (section 10, Act No. 258, Public Acts 1905), provides that:

"Every mortgage, or conveyance intended to operate as a mortgage, of goods and chattels, which shall hereafter be made, which shall not be accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers or mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the office of the township clerk * * * where the goods or chattels are located," etc.

The indebtedness for which A. G. Wells Company obtained judgment against Reichel Bros. arose out of credit extended March 10, 1911, while plaintiff's mortgage was withheld from record. The company's claim accrued subsequent to the execution and delivery of an unrecorded chattel mortgage, and it could therefore assert a lien upon the property before or after the mortgage was filed under the recording law. This whole subject has been so recently reviewed, with numerous authorities cited, in *People, for use of Esper,* v. *Burns,* 161 Mich. 169 (125 N. W. 740, 137 Am. St. Rep. 466), and *City Bank & Trust Co.* v. *Hurd,* 179 Mich. 454 (146 N. W. 299), that further discussion of that question here is unnecessary.

It is the contention of plaintiff that there was, in legal effect, under the facts shown, such a delivery or change of possession of the things mortgaged at or about the time of delivering the instrument to him as to relieve plaintiff from the necessity of recording the mortgage, not by actual delivery of the property to him, but into the hands of a third party with his consent, who had notice of his mortgage, held actual and exclusive possession against the mortgagor, and, as a matter of law, held possession for the mortgagee.

It may be conceded that, if this property was turn-

ed over to the fuel and lumber company to hold for plaintiff, while its indebtedness was being worked out, such change of possession would be sufficient to protect his security, but the record fails to show such was the case. Plaintiff is not shown to have been a party to the contract by which Reichel Bros. turned the property over to the fuel and lumber company or to even have communicated with the latter on the subject; his dealings were with Reichel Bros., in which he gave them his consent to their letting the fuel and lumber company take the property and use it for a time. There were no contractual relations between him and the latter, and whether it even had notice or knowledge of his chattel mortgage is a matter in dispute. Its possession came from Reichel Bros. with their consent, was for an indefinite time, not hostile nor adverse to their title, and was contingent on their indebtedness being paid to it. They had, so far as shown, the right at any time to pay up the balance owing and take their property. The property was being held by the bailee for the bailor from whom it was received and with whom the contract of bailment was made, and from whom there were no instructions to return the property at the expiration of the bailment to any third party.

We conclude the learned circuit judge correctly held that, under the undisputed evidence in this case, there was no change of possession, as between mortgagor and mortgagee, and plaintiff's chattel mortgage was invalid as to the A. G. Wells Company, which became a creditor of the mortgagor in good faith after said mortgage was given and before the same was put on file and of record.

The judgment is affirmed.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.